859 So.2d 159 (2003)
Alga MILLER, Pearl Miller, Dalton Miller, Vergis Adams, Rita Adams, Anita Miller, Wilbert Miller and Opal Miller
v.
SUPERIOR SHIPYARD AND FABRICATION, INC., Chris J. Guidry, Louisiana Farm Bureau Mutual Insurance Company, Ulysses Hunter, T.T.C. Illinois, Inc., Lexington Insurance Company, State Farm Mutual Automobile Insurance Company and Allstate Indemnity Company.
No. 2001 CA 2907-R.
Court of Appeal of Louisiana, First Circuit.
August 20, 2003.
*161 J.B. Jones, Jr., Cameron, for Plaintiffs, Alga Miller, et al.
Barry Boudreaux, Houma, Patrick J. McShane, Frederick J. Greschner, Jr., New Orleans, for Defendant, Superior Shipyard and Fabrications, Inc.
Mark C. Dodart, Nora B. Bilbro, New Orleans, for Defendant/Appellant, Lexington Insurance Company.
Isaac H. Soileau, Jr., New Orleans, for Defendant/Appellee, T.T.C. Illinois, Inc.
Harold J. Lamy, New Orleans, for Defendant, Ulysses Hunter.
Thomas L. Hutchinson, New Orleans, for Defendants, Louisiana Farm Bureau Mutual Ins. Co. and Chris Guidry.
Cheri T. Burlett, New Orleans, for Defendant, Chris Guidry.
Michael G. Gee, Thibodaux, for Defendant, State Farm Mutual Automobile Ins. Co.
Christopher E. Lawler, Metairie, for Defendant, Allstate Insurance Company.
Before: CARTER, C.J., WHIPPLE, and CIACCIO,[1] JJ.
CARTER, C. J.
This case is before us on remand from the Supreme Court to consider the merits of Lexington Insurance Company's (Lexington's) appeal from a partial summary judgment granted in favor of T.T.C. Illinois, Inc. (T.T.C.). For the following reasons, we affirm.

BACKGROUND
This matter arises out of a pedestrian-vehicular accident at Superior Shipyard and Fabrications, Inc. (Superior) in Golden Meadow, Louisiana, on August 11, 1998. The accident occurred when a contract welder for Superior, Chris Guidry (Guidry), backed over Alga Miller (plaintiff), while operating his welding truck in connection with a job on Superior's premises.[2] The accident occurred in full view of another contract welder, Ulysses Hunter (Hunter), who allegedly could have prevented the accident.
Plaintiff brought suit on October 2, 1998, against Superior, Guidry, Hunter, and Guidry's insurer.[3] The petition was supplemented *162 and amended numerous times to name various other insurers, including Lexington, Superior's commercial general liability (CGL) insurer, and T.T.C. as defendants. T.T.C. contracted with Superior to provide payroll and benefit processing services and other administrative functions such as handling workers' compensation and unemployment claims. The contract between T.T.C. and Superior required Superior to provide comprehensive liability insurance and name T.T.C. as an additional named insured under the policy.
Plaintiff alleged that T.T.C. was vicariously liable for the negligence of Superior and the contract welders, Guidry and Hunter. T.T.C. denied all liability and filed a cross-claim against Superior and Lexington for its defense, attorney's fees, costs and expenses pursuant to its agreement with Superior; however, Lexington denied coverage for T.T.C. under its CGL policy.
T.T.C. filed a motion for partial summary judgment against Lexington asking the trial court to grant "additional-insured" status to T.T.C. pursuant to an endorsement in the Lexington CGL policy, thereby requiring Lexington to provide T.T.C. with a defense and to reimburse attorney's fees and expenses. On September 10, 2001, the trial court granted T.T.C.'s motion for partial summary judgment, and Lexington appealed that judgment.[4] The only issue to be addressed is whether T.T.C. is entitled to additional-insured status under the Lexington CGL policy.

STANDARD OF REVIEW
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Robinson v. Heard, XXXX-XXXX, p. 3 (La.2/26/02), 809 So.2d 943, 945. Interpretation of an insurance policy is usually a legal question that can be properly resolved by means of a motion for summary judgment. Sanchez v. Callegan, 99-0137, p. 5 (La.App. 1 Cir. 2/18/00), 753 So.2d 403, 405. When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms. See Doerr v. Mobil Oil Corp., XXXX-XXXX, p. 5 (La.12/19/00), 774 So.2d 119, 124, modified on other grounds on reh'g, XXXX-XXXX (La.3/16/01), 782 So.2d 573. Summary judgment declaring a lack of coverage under an insurance policy may be rendered only if there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Sanchez, 753 So.2d at 405.

DISCUSSION
An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Highlands Underwriters Ins. Co. v. Foley, 96-1018, p. 6 (La.App. 1 Cir. 3/27/97), 691 So.2d 1336, 1340. Because an insurance *163 policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. Billiot v. Terrebonne Parish Sheriff's Office, 98-0246, p. 9 (La.App. 1 Cir. 2/19/99), 735 So.2d 17, 24, writ denied, 99-1376 (La.7/2/99), 747 So.2d 22. The parties' intent, as reflected by the words of an insurance policy, determines the extent of coverage, and the intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. LSA-C.C. art.2047; Highlands Underwriters, 691 So.2d at 1340. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written and a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. Id.; Robinson, 809 So.2d at 945. The determination of whether a contract is clear or ambiguous is a question of law. Watts v. Aetna Cas. and Sur. Co., 574 So.2d 364, 369 (La.App. 1 Cir.), writ denied, 568 So.2d 1089 (La. 1990).
In the instant case, it is undisputed that Superior and T.T.C. had a written contract that required Superior to name T.T.C. as an additional named insured under the Lexington CGL policy.[5] It is also undisputed that T.T.C. was not specifically named as an additional insured in the Lexington CGL policy. However, the Lexington CGL policy contained an endorsement with very specific language regarding additional-insured status when required by a written contract.
The interpretation of the additional-insured endorsement is a question of law, and we must examine the specific language of the endorsement to determine its meaning. The endorsement provides:
It is agreed that, if required by written contract, any person, firm or organization is included as an Additional Insured but only with respect to operations performed by the Named Insured or to acts or omissions of the Named Insured in connection with the Named Insured's operations.
It is undisputed that the only named insured in the Lexington CGL policy was Superior. Thus, under the clear and unambiguous language of the endorsement, additional-insured status extends only when required by contract (as in this case) and only with respect to operations performed by Superior or to acts or omissions of Superior in connection with Superior's operations. The endorsement was clearly intended to limit the additional-insured status to claims arising out of Superior's acts or omissions in connection with its operations and to protect the additional insured from exposure to liability for Superior's acts or omissions.
Lexington argues that T.T.C. was brought into the instant case based on plaintiff's allegations of T.T.C.'s own negligence and for the negligence of its alleged employees, Guidry and Hunter. Lexington contends that the endorsement does not provide additional-insured status for T.T.C.'s own negligence. We find no merit to Lexington's argument. The plain wording of the endorsement shows that it applies to any potential liability sought to be *164 imposed upon the additional insured (T.T.C.) because of something the named insured (Superior) is alleged to have done or failed to have done in connection with the named insured's (Superior's) operations.
A review of the pleadings reveals that T.T.C. was brought into the litigation based on plaintiff's allegations of vicarious liability for the negligent actions of Guidry, Hunter and Superior, not for any allegation of individual negligence on the part of T.T.C.[6] Plaintiff was allegedly injured on Superior's premises as a result of an accident directly connected with Superior's business operations. The accident arose out of the business operations (preparations for welding on Superior's premises) performed by Superior, not operations performed by T.T.C. (processing and computing payroll, benefits, workers' compensation, or unemployment benefits claims). Plaintiff makes no allegations regarding individual negligent acts or omissions by T.T.C. that led to his injury. The additional-insured coverage arises out of the allegations made by plaintiff that T.T.C. was vicariously liable for the negligence of Superior, in that Superior allegedly failed to adequately light the premises and failed to adequately warn and provide for rules of passage around the premises. Plaintiff also alleged that Superior violated various statutory regulations. Thus, the specific requirement of the additional-insured endorsement (allegations of Superior's acts or omissions in connection with its operations) is met, and we find that T.T.C. is an additional insured under the Lexington CGL policy.
We also find that Lexington's argument that there remain genuine issues of material fact regarding whether Guidry and Hunter were employees of Superior or T.T.C., or both, is irrelevant for purposes of determining T.T.C.'s additional-insured status. T.T.C.'s potential vicarious liability for the negligent acts of its alleged employees is one aspect of plaintiff's claim against T.T.C. Another part of plaintiff's claim against T.T.C. is its potential vicarious liability for the negligent acts of Superior. It is the exposure to liability for Superior's negligence that triggers the additional-insured status for T.T.C., as well as Lexington's duty to defend. Although Lexington's CGL policy may not provide coverage for each of plaintiff's claims against T.T.C., it does provide coverage for some of the claims and that is sufficient to trigger Lexington's duty to defend the entire claim.
It is well settled that an insurer's obligation to defend suits against its insured is broader than its liability for damage claims. The duty to defend is determined by the allegations of the injured plaintiff's petition, and the insurer is obligated to furnish a defense unless the petition unambiguously excludes coverage. See Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La.1987); American Home Assur. Co. v. Czarniecki, 255 La. 251, 269, 230 So.2d 253, 259 (1969). Furthermore, the allegations of the petition are to be liberally interpreted in ascertaining whether they engender a duty to defend. If they do not unambiguously exclude coverage, then the insurer is required to defend, irrespective of the outcome of the suit. Yount v. Maisano, 627 So.2d 148, 153 (La.1993).
Plaintiff's petition (as supplemented and amended) contains allegations of Superior's *165 acts or omissions in connection with its operations and the potential vicarious liability of T.T.C. for Superior's acts or omissions. Thus, Lexington's duty to defend T.T.C. as an additional insured was triggered, and T.T.C. has the right to call upon Lexington to provide a defense and to reimburse it for defense expenses it has previously incurred. The remaining issue of whether Superior's alleged acts or omissions actually rise to a level of negligence and whether Lexington will ultimately be responsible for damages is irrelevant to the issue of Lexington's duty to defend T.T.C.

CONCLUSION
We conclude that the trial court correctly granted T.T.C. additional-insured status under the clear language of the endorsement to Lexington's CGL policy. T.T.C. was entitled to summary judgment as a matter of law, and we affirm the trial court's ruling in all respects. Costs of this appeal are assessed against defendant/appellant, Lexington Insurance Company.
AFFIRMED.
NOTES
[1] Hon. Philip C. Ciaccio, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Plaintiff was on Superior's premises to clean the yard and cut the grass.
[3] Plaintiff and his wife died subsequent to the filing of suit and his adult children were substituted as parties to assert the decedents' claims.
[4] Several motions for summary judgment were heard on August 16, 2001. The trial court signed the partial summary judgment at issue on September 10, 2001, and designated the judgment as final and appealable. Lexington appealed, and on November 8, 2002, this court dismissed the appeal after determining that the trial court improperly certified the partial summary judgment as final. See Miller v. Superior Shipyard and Fabrication, Inc., 2001-2907 (La.App. 1 Cir. 11/8/02), 835 So.2d 693. On May 2, 2003, the Supreme Court reversed the dismissal and remanded the case for us to consider the merits of Lexington's appeal. See Miller v. Superior Shipyard and Fabrications, Inc., XXXX-XXXX (La.5/2/03), 847 So.2d 1182.
[5] The written service agreement contract between Superior and T.T.C. provided as follows:

[Superior] shall obtain and maintain in full force and effect ... comprehensive liability and property damage insurance with respect to the use or operation of equipment or property owned, possessed, transported or leased by [Superior], and [Superior] shall assume full liability to the public for the use or operation thereof. [Superior] shall have T.T.C. added as an additional named insured on all policies providing such coverage. (Emphasis added.)
[6] Plaintiff's First Supplemental and Amending Petition for Damages names T.T.C. as a defendant and specifically alleges: "T.T.C. is liable under the Doctrine of Respondeat Superior for the fault of Guidry, [Hunter], and Superior." There is no specific allegation of T.T.C.'s individual fault. Plaintiff made no other allegations against T.T.C. in any pleading, other than to allege that Guidry and Hunter were T.T.C.'s employees.