GAIDRY, J.
| ¡.This is an appeal of a motion for summary judgment and motion for partial summary judgment relating to an exclusion of coverage under liability policies issued by the defendant-appellee, Farmers Insurance Exchange (Farmers). For the following reasons, we affirm the trial court’s granting of the motions for summary judgment and partial summary judgment in favor of Farmers, thereby dismissing Farmers, with prejudice, from this matter.
FACTS AND PROCEDURAL BACKGROUND
On July 12, 2008, Victoria Jones, then ten-year-old daughter of Matthew and Tara Jones, asked permission from her parents to drive a golf cart which was owned by them and kept at their residence for the primary purpose of traveling to the nearby golf course and playing golf there. On the above mentioned date, Victoria was transporting herself and her friends up and down Summerlin Drive, the public street on which they lived in Zachary, Louisiana. Summerlin Drive allows entry and exit to a nearby golf course at Fenn-wood Hills Country Club; however, the record is clear that Victoria was not driving the golf cart for the purpose of playing golf. The street also ends in a cul-de-sac several houses down from the Jones residence.
A few houses down from the Jones family lived Jason and Laura Latino, along with their son Colby, who was six years old at the time. Colby was riding his bicycle on' the cul-de-sac of Summerlin Drive at the same time Victoria was riding around in the golf cart. As Victoria entered the cul-de-sac on the golf cart, the record reflects that Victoria believed Colby was playing “chicken” with her by riding his bike right in front of the golf cart as she was driving it. As a result, Victoria struck Colby from behind, knocking |c.him off the bike and onto the ground. The *337 record reflects Victoria did not think Colby was seriously injured, and she immediately drove home and reported the incident to her mother.
Approximately thirty minutes later, the Joneses decided to go to the Latino residence to see how Colby was doing. They found Colby sitting in his driveway with his parents and some neighbors. The Joneses were told by the Latinos that Colby had been throwing up since the accident occurred, and around that time an ambulance arrived to transport Colby to Our Lady of the Lake Hospital. The Joneses later discovered that Colby was taken to the hospital’s Intensive Care Unit due to having problems with his kidney. Subsequently, one half of one of Colby’s kidneys was removed.
The Latinos filed their petition for damages on June 18, 2009 in the 19th Judicial District Court. They asserted that Matthew and Tara Jones were vicariously liable for the acts of their minor daughter, Victoria, which caused their son extensive injuries and that required the partial removal of one of his kidneys. The Latinos also claimed on behalf of their son Colby damages for his pain and suffering, mental anguish, loss of enjoyment of life, and medical expenses.
The Latinos also named as a defendant Farmers Insurance Exchange. Farmers had issued to the Joneses liability coverage under a homeowner’s policy and an automobile policy. In Farmers’ answer, filed July 29, 2009, it is specifically alleged that no coverage is warranted for the Latinos’ claims in their petition for damages. Specifically, Farmers refers to the homeowner’s policy’s exclusion provision:
Section II-Exclusions:
LI. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to “bodily injury” or “property damage”:
f. Arising out of:
(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an “insured”;
(2) The entrustment by an “insured” of a motor vehicle or any other motorized land conveyance to any person; or
(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.
While not mentioned in Farmers’ answer, the policy contains exceptions to the exclusions of coverage, which read in part as follows:
This exclusion does not apply to:
(3) A motorized golf cart when used to play golf on a golf course;
(4) A vehicle or conveyance not subject to motor vehicle registration which is:
(a) Used to service an “insured’s” residence;
(b) Designed for assisting the handicapped; or
(c) In dead storage on an “insured location”
Fanners further refers to its automobile policy issued to the Joneses, where coverage is also excluded:
B. We do not provide Liability Coverage for the ownership, maintenance or use of:
1. Any vehicle which:
|sa. Has fewer than four wheels; or
b. Is designed mainly for use off public roads.
*338 Matthew and Tara Jones filed a cross-claim against Farmers as their insurer on April 15, 2010, along with their answer to the Latinos’ petition for damages. Farmers filed a motion for partial summary judgment on August 18, 2010, praying to be dismissed from the Joneses’ cross-claim. Farmers filed another motion for summary judgment on August 28, 2010, praying to be dismissed from the lawsuit entirely, with prejudice. On January 3, 2011, Judge Clark of the Nineteenth Judicial District Court granted both motions, thereby dismissing Farmers from the lawsuit with prejudice. On January 19, 2011, the Latinos filed this motion for devolutive appeal.
ASSIGNMENTS OF ERROR
The Latinos contend that the policy can be reasonably interpreted to afford coverage to the Joneses for the accident, and therefore the trial court improperly granted summary judgment.
The Latinos also contend that fact issues exist concerning whether the location of the accident occurred on an “insured location” under the policy, and therefore summary judgment was improper in this instance as well.
STANDARD OF REVIEW
The standard of review on a motion for summary judgment is de novo, where the appellate court must use the same criteria as the trial court to determine whether summary judgment was proper. Breaux v. Bene, 95-1004 (La.App. 1st Cir.12/15/95), 664 So.2d 1377, 1380. Whether a contract is ambiguous or not is a question of law. Borden, Inc. v. Gulf States Utilities Co., 543 So.2d 924, 928 (La.App. 1st Cir.), writ denied, 545 So.2d 1041 (La.1989). An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. Miller v. Superior 6Shipyard and Fabrication, Inc., 2001-2907, p. 5 (La.App. 1st Cir.8/20/03), 859 So.2d 159, 162. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or legally incorrect. Borden, 543 So.2d at 928.
DISCUSSION

General Principles of Contractual Interpretation

Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. This is an objective inquiry; thus, “a party’s declaration of will becomes an integral part of his will.” La. C.C. art. 2045, Revision Comments — 1984, (b). When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046, The words of a contract must be given their generally prevailing meaning. La. C.C. art. 2047. Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Because an insurance policy is a contract, the rules established for the construction of written instruments apply to contracts of insurance. Miller, 859 So.2d at 162, 163.
Louisiana Civil Code Article 2056 provides:
In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
*339 A contract executed in standard form of one party must be interpreted, in case of doubt, in favor of the other party.
Similarly, La. C.C. art. 2057 sets forth an analogous rule:
|7In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation.
Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party whether obligee or obligor.

The Insurance Contract

The appellant argues that the language in the pertinent coverage exclusions is somewhat ambiguous and is open to interpretation; therefore, according to Louisiana Civil Code articles 2056 and 2057, the policy should be interpreted against the obligee and drafter of the contract, which in this case would be Farmers, and in favor of the obligors, the Joneses. Both the Latinos and the Joneses would benefit if coverage was afforded under the policy, but we do not agree with this outcome. Rather, the contract language is very clear and unambiguous.
By reading the Section II exclusions outlined swpra, we note that “bodily injury” did occur to Colby Latino in that he was knocked off his bike, resulting in visibly apparent scratches and abrasions that both Matthew and Tara Jones testified to seeing on Colby, vomiting, and serious internal damage to his kidney. The bodily injury resulted from the use of a motor vehicle or other motorized land conveyance owned or operated by an insured. Matthew Jones testified that he purchased the 2003 Ez-Go golf cart in 2005. The golf cart was obviously operational since his daughter was operating it when the accident occurred. There was an “entrustment by an ‘insured’ of a motor vehicle or . .■. motorized land conveyance to any person” under subsection f(2) when the insured Joneses granted permission to their daughter to ride the cart. Finally, subsection f(3) also applies because there is vicarious liability for the acts of a minor in connection with motorized | ^conveyance under (1) and (2). This is statutorily provided by La. C.C. art. 2318. From simply the plain meaning of the words, without putting any extra effort into their interpretation, we see that the golf cart driven by Victoria Jones with the permission of her parents clearly fits into the policy’s exclusion clause.
However, the policy becomes more explicit when it addresses golf carts specifically. Exceptions (3) and (4) clearly contemplate a vehicle such as the one that was operated by Victoria Jones. Exception (3) would afford coverage had the cart been used at the time to play golf, but the record states through the Joneses’ own admissions that the cart was not being used to play golf at the time of the accident. While we agree with the appellants that a golf cart can fit the definition of the vehicle contemplated in exception (4), the cart was not used in the listed ways that afford coverage at the time of the accident. The cart was not being used to service the Jones residence at the time of the accident. Mr. Jones admitted in his deposition that the golf cart had been used in the past to haul cement bags to repair his fence right after hurricanes Katrina and Rita, and he would also use the golf cart to assist in landscaping his yard. While we agree that those are insured activities, the cart was not being used in those capacities at the time of the accident. Exception (4) also contemplates the transportation of the handicapped as a covered action. Mr. *340 Jones testified that the cart has been used in the past to bring his mother-in-law to and from her home to his, since he claimed her to be elderly and unable to walk the distance on her own. Again, while this would be a covered act, the record does not support that Victoria Jones was transporting any handicapped person with her in the golf cart. The “dead storage” provision obviously does not apply since the 13cart was being driven at the time of the accident. None of the exceptions would therefore be applicable to cover the golf cart in this matter.
The appellants argue in their brief (without any legal support) that since the golf cart had been used in the past to service the Jones residence and to transport the handicapped, then exception (4) does apply because had Farmers wanted to be so specific that coverage would only apply while the cart was being used in those capacities, then exception (4) would have included the word “while” to make those distinctions. Here the appellants are asking this court to make a leap of interpretation we are not willing to make without legal authority to do so. The exceptions, when taken as a whole, are clear, and the meaning they convey is that if a golf cart causes bodily injury while it is being used to play golf, to service the insured’s residence, or to transport the handicapped, coverage does apply. The word “while” is understood and does not have to be written. The appellants further argue that a jury could reasonably conclude that the cart was covered since it had been used in an acceptable manner more than once in the past. We also disagree with this point, as the policy’s reading covers the use of the vehicle and not the vehicle itself. We find that Bumgardner v. Terra Nova Insurance Company, 36,615 (La.App. 2nd Cir.1/23/2002), 806 So.2d 945, cited by Farmers is not as distinguishable as appellants contend, because the Second Circuit looked to the use of the vehicle at the time of the accident to decide whether or not the vehicle (a tractor) was used as intended for coverage when the bodily injury occurred. The coverage exceptions Bumgardner deals with are identical to those here, word for word. Id., at 949. We can find no reason to draw a different conclusion than the Second Circuit from reading the same words.
| )0As for the exclusion in the automobile policy, the same theories of strict interpretation apply. Coverage is excluded for “use” of a vehicle with fewer than three wheels or which is designed mainly for use off of public roads. A four-wheeled golf cart can be excluded by the second clause, as it is designed primarily for use on a golf course. The designed use and not the actual use of the vehicle by the insured is contemplated by the language of the clause. Although the cart can be driven on a public roadway, just as a four-wheeled ATV or a dirt bike, none of those vehicles were ever designed and cannot be licensed for operation on a public roadway as can an automobile or a motorcycle. Nowhere in the record is the vehicle in question called anything other than a “golf’ cart.
Finally, appellants argue that the cul-de-sac where the accident occurred is an “insured location.” The policy’s definition of “insured location,” in pertinent part, is as follows:
4. “Insured location” means:
a. The “residence premises”;
c. Any premises used by you in connection with a premises in 4.a.”
No other parts of the definition apply to this case. Appellants argue the cul-de-sac and street fit the definition of “insured location” because they are used “in connection with” the residence every time the *341 cart is driven from the home to another location and back. Again the appellants give no legal authority for this argument, and we believe this argument is flawed because it leads to an absurd result. It is undisputed in the record that the cart was primarily used for transport between the residence and the golf course. It is also undisputed that the golf cart is covered when at the Jones residence and when it is at the golf course being used to play golf. Is the Ingolf cart covered when it is en route between those locations? We think not. To say that the cart is covered whenever it is on its way to an insured location leads to a series of circumstances that Farmers clearly did not anticipate with its policy. The appellants’ argument would mean that Summerlin Drive, a public street on which other residences are located, can be insured as a part of the Joneses’ residence. The street is obviously not part of the Jones residence as the public street is owned by the public and is subject to public use. La.C.C. art. 457. The appellants’ argument would also mean that any street on which the cart drives would be an “insured location,” so long as the cart’s final destination is another “insured location.” Farmers certainly did not intend with its policy to give the Joneses the ability to roam freely with the golf cart and be covered so long as the destination is an “insured location.” That would be the case nearly every time because the cart would always eventually return to the Jones residence. Neither does Farmers have to be so meticulous as to insure one stretch of road that the Joneses would be covered to ride their cart up and down as much as they like, nor could it be expected that Farmers intended to insure a part of a public street on behalf of the Joneses.
The intent of the parties determines the extent of coverage. Miller v. Superior Shipyard and Fabrication, Inc., 2001-2907 (La.App. 1st Cir.8/20/03), 859 So.2d 159, 163. We find that Farmers could have in no way intended to have an indeterminate public roadway fall into the category of “insured location” for the purpose of covering the accident at issue. This accident occurred in the cul-de-sac which is several houses away from the Jones residence, based on statements from both Matthew and Tara Jones. Mr. Jones testified at the time of the accident, he and his wife were standing at the corner of Summerlin and Weschester, which is approximately five | ^houses away from their home. Mrs. Jones testified that the cul-de-sac was ten or twelve houses from where they stood. That places the Jones residence five to seven houses away from the cul-de-sac. We find this distance to be too far to agree with the appellants that the cul-de-sac is used “in connection with” the Jones residence. The argument of the appellants is therefore without merit.

Genuine Issues of Material Fact?

We find that the language of the insurance policy is clear and unambiguous, and there is no question as to what Farmers intended to cover with its policy and what to exclude from coverage. It is clear to us that a golf cart used, in the fashion it was used at the time of the accident by Victoria Jones, is not covered by either the Joneses’ homeowner’s or automobile policies. Summary judgment declaring a lack of coverage under an insurance policy may be rendered only if there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Id., at 162.
DECREE
The trial court’s granting the motion for summary judgment for appellee Farmers *342 and against appellants Jason and Laura Latino, individually and on behalf of their minor son Colby Latino is affirmed. The trial court’s granting the motion for partial summary judgment in favor of appellee Farmers and against cross-claimants Matthew and Tara Jones is affirmed. Appel-lee Farmers is hereby dismissed from the lawsuit, with prejudice. Costs of this appeal are assessed to the appellants, Jason and Laura Latino.
AFFIRMED.
HUGHES, J., concurs with reasons.