BROWN, Chief Judge.
JjThis is a tort case seeking damages for injuries sustained by plaintiff, Danielle Schelmety, while riding in a Rhino “side by side” four-wheel off-road vehicle driven by defendant, James Johnson. The instant appeal by both Danielle and James is from a summary judgment dismissing with prejudice Danielle’s claim against defendants, Safeco Insurance of America and Safeco Insurance Company of Oregon (“Safeco”), the homeowners’ and umbrella insurers of the Rhino owner, Dr. William Smith, and his son, Michael.[1] Finding no error, however, we affirm.

Facts and Procedural Background

Michael Smith, Danielle and James were law students at Mississippi College School of Law at the time of this accident. Danielle and Michael were dating, and Michael and James were roommates. On the night before the accident, the trio rode together to Ruston, Louisiana, to attend a crawfish boil in celebration of Michael’s birthday. They stayed at the home of Michael’s parents, Dr. William and Kelly Smith, which' is located at 1024 Wedgewood Drive in Ruston. This was the first time that the Smiths met both Danielle and James. The next day, March 29, 2013, before the craw-fish boil and with permission from Michael and Dr. Smith, James and Danielle took a ride on the Rhino, leaving from the driveway of the Smiths’ home, with James driving and Danielle as his passenger. James drove the Rhino down Wedgewood Drive, made a loop on Pennington Lane, and turned onto |2Cooktovm Road, a two-lane highway also identified as State Highway 544, before taking a right onto Bittersweet Avenue. He then took a left on Dixie Street and turned right on Mimosa Drive. In the cul-de-sac on Mimosa Drive, as James was in the middle of the turn, the Rhino flipped onto its passenger side, pinning Danielle’s left arm between the vehicle and the pavement. She was rushed to the hospital where emergency surgery was performed on her shattered and crushed forearm, wrist and hand. Since the accident, Danielle has had multiple surgeries and extensive physical therapy. She is permanently disfigured and partially disabled.
On August 13, 2013, Safeco denied a claim filed by the Smiths, contending that there was no coverage for Danielle’s injuries because “the loss did not occur at an insured location.” Thereafter, on March 20, 2014, Danielle filed the instant action, asserting products liability claims against *197 Yamaha, the Rhino’s manufacturer; a claim against James Johnson for his negligence in attempting to turn too sharply and/or too quickly; and negligent entrustment claims against William and Michael Smith. She also named Safeco as a defendant, urging, inter alia, Safeco’s liability for the Smiths’ negligent entrustment of the Rhino to James Johnson and James’ general operational negligence. Safeco filed an answer, as did other named defendants, and a third-party demand was filed by the .Smiths against their insurance agency. .
On September 2, 2014, Safeco-filed their motion for summary judgment, urging the trial court to grant summary judgment in their favor and dismiss plaintiffs claims against them because:
Based on the undisputed facts, there is no possibility of coverage for plaintiffs claims for injuries arising put of the use of a recreational vehicle on a public street under either the Homeowners Policy or | ¡¿Personal Umbrella Policy issued to William and Kelly Smith. First, plaintiffs elaims against the driver, James Johnson, are not covered because Johnson does not qualify as an insured under either policy since he is not a relative of the Smiths nor is he a resident of their home. Even if Mr. Johnson was somehow deemed an insured, plaintiffs claims against Johnson, along with her claim against William and Michael Smith, are all unambiguously barred from coverage under both policies’ motorized land vehicle/recreatipnal vehicle use exclusions because plaintiffs injuries undisputedly arose out of use.of a motorized land vehicle/recreational vehicle on a public street approximately 1/2 mile away from the Smith residence.
Both Danielle and James filed oppositions to the motion for summary judgment. The trial court granted Safeco’s motion, finding that neither the Smiths’ homeowners’ policy nor their umbrella policy provided coverage for James or the accident and the injuries sustained by Danielle. It is from this judgment that both Danielle and-James have appealed, urging that the trial court erred in finding no coverage under the Smiths’ homeowners’ policy.

Discussion

Summary judgment is favored and is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents .show that there is no genuine issue as to material fact and that the mover is entitled, to judgment as a matter of law.. La. C.C.P. art. 966(A)(3). Appellate courts review summary, judgment de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Costello v. Hardy, 03-1146 (La.01/21/04), 864 So.2d 129; Walters v. City of West Monroe, 49,602 (La.App.2d Cir.02/04/15), 162 So.3d 419, writ denied, 16-0440 (La.05/15/15), 170 So.3d 161; In re Succession of Crowson, 48,986 (La.App.2d Cir.05/14/14), 139 So.3d 43.
l/The interpretation of an insurance contract is usually a legal question that can be properly-resolved by means of a motion for summary judgment. Bernard v. Ellis, 11-2377 (La.07/02/12), 111 So.3d 995; Cutsinger v. Redfern, 08-2607 (La.05/22/09), 12 So.3d 945; Bumgardner v. Terra Nova Ins. Co. Ltd., 35,615 (La. App.2d Cir.01/23/02), 806 So.2d 945. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless -there is no reason *198 able interpretation of the policy, when applied to’ the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Elliott v. Continental Casualty Co., 06-1505 (La.02/22/07), 949 So.2d 1247; Reynolds v. Select Properties, Ltd., 93-1480 (La.04/11/94), 634 So.2d 1180.
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Green ex rel. Peterson v. Johnson, 14-0292 (La. 10/15/14), 149 So.3d 766; Marshall v. Louisiana Farm Bureau Cas. Ins. Co., 50,190 (La.App.2d Cir.11/18/15), 182 So.3d 214. An insurance contract must be “construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.” La. R.S. 22:881; Burmaster v. Plaquemines Parish Government, 10-1543 (La.App, 4th Cir.03/30/11), 64 So.3d 312. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La, C.C. art. 2046. In such cases, the insurance contract must be enforced as 'Written, Bumgardner, supra,
 Insurance companies may limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Elliott, supra; Jones v. Youngblood, 50,115 (La.App.2d Cir.09/30/15), 180 So.3d 455; Bumgardner, supra. However, exclusionary provisions in -insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Elliott, supra; Byrnside v. Hutto, 47,685 (La.App.2d Cir.02/27/13), 110 So.3d 603; Bumgardner, supra. The burden is on the insurer to prove that a loss comes within a policy exclusion. Rodgers v. State Farm Mut. Auto. Ins., 15-0868 (La.06/30/15), 168 So.3d 375; Byrnside, supra.

Is James Johnson a resident of the Smith household such that , he is covered by the Safeco homeowners ’ policy ? .

Appellants dispute the trial court’s determination that James Johnson was not a resident of the Smith household and therefore not an insured under the Safeco policy. According to appellants, based upon the language in the policy, and the fact that the term “resident” is not defined, James should be considered to be a resident and thus an “insured” at the time of the accident.
We find this provision to be clear and unambiguous. Under the explicit terms of the Safeco policy, James Johnson was not one of the named insureds (William and Kelly Smith), nor was he a relative or, as a first-time, temporary houseguest of their grown son, did he qualify as “any other person who is in the care of any person” described in (1) (William or Kelly Smith) or (2)(a) (a relative of William and .Kelly Smith’s, sucih as their son Michael, who was covered as an insured by (2)(a) and as a student’ temporarily residing away from the residence premises). The lack of a definition for the term “resident” does not confer coverage for James. ^“Resident” is neither a term of art nor a technical term. Therefore, it is to be given its general popular meaning. See, Lemoine v. Illinois National Ins. Co., 38,237 (La.App.2d Cir.03/12/04), 868 So.2d 304, writs denied, 04-0926, 04-0904 (La.06/04/04), 876 So.2d 86, 87. As pointed out by Justice Blanche in Bearden v. Rucker, 437 So.2d 1116, 1123 (La.1983) (Blanche, J., dissenting), “Resident, in its most generally accepted meaning, suggests a factual place of abode-a *199 place where a party actually dwells. Black’s Law Dictionary, Webster’s Third New International Dictionary.”
Whether or not a person is a resident of a particular place is a question of law and fact to be determined from all of the facts of each particular case. Gedward v. Sonnier, 98-1688 (La.03/02/99), 728 So.2d 1265;. Smith v. Rocks, 42,021 (La.App.2d Cir.05/16/07), 957 So.2d 886. In determining whether a person is a resident of a particular household with respect to insurance coverage, the emphasis is upon whether there remains membership in a group or a relationship with a person, rather than an attachment to a building; the issue is a matter of intention and choice, not one of location. Gedward, supra; Bearden, supra; Jones, supra. This determination must be based on the evidence as a whole, not on isolated facts that support a particular conclusion. Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981); Chapman v. Poirrier, 96-977 (La.App. 3d Cir.02/05/97), 689 So.2d 623, writ denied, 97-1164 (La.06/20/97), 695 So.2d 1358.
As observed by the Fourth Circuit in Davis ex rel. Zaire Ali Rose v. Pleasant, 10-1383 (La.App. 4th Cir.06/15/11), 68 So.3d 679, 682:
The intention of a person to be a resident of a particular place is determined by his expressions at a time not suspicious, and his testimony, when called on, considered in the light of his conduct and |7the circumstances of his life. Although residency is dependent on the facts of each case, the principal test is physical presence with the intention to continue living there. (Citations omitted). .
The evidence in this case establishes that James Johnson is not related to the insured parties, William and Kelly Smith, or their son, Michael. Prior to the weekend of the accident, James had never met Dr. or Mrs. Smith, and was in' Ruston to attend Michael’s birthday party. The fact that James was a transitory houseguest of the Smiths for the weekend does not constitute a “physical presence with the intention tó continue living there.” Likewise, James’s statement during his deposition that he had an intention to reside with the Smiths while he was staying with them is clearly not “an expression [Of an intention to be a resident] át a time not suspicious.”[2]
Ah insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Waggoner v. America First Ins., 42,863 (La. App.2d Cir.01/16/08), 975 So.2d 110. After reviewing the record and the applicable legal principles, we agree with the trial court that there is no reasonable interpretation of the Safeco-policy, when applied to the undisputed material facts established by the evidence supporting and opposing the motion for summary judgment, under which coverage, mould be extended to James Johnson, a non-family member, first-time, weekend houseguest,,, as a resident or insured.[3] See, Smith, 957 So.2d at 890 (citing Reynolds, supra); Davis v. *200 American Heritage Life Ins. Co., 35,153 (La.App.2d Cir.10/31/01), 799 So.2d 705.

Applicability and Validity of Motor Vehicle Use Exception

Commercial general and personal liability policies provide broad coverage for liability arising out of an “occurrence.” Then, through a series of exclusions, these policies delete from coverage various risks for which the insurance industry intends for the insured to purchase coverage under other policies. 15 William Shelby McKenzie & H. Alston Johnson, III, Louisiana Civil Law Treatise, Insurance Law & Practice, § 3.35 (4th ed.2012). Homeowners policies usually contain exclusions for bodily injury and property damage arising out of the ownership, maintenance, operation, use, loading or unloading of aircraft, automobiles, other motor vehicles and water craft with certain exceptions expressed in the exclusions. Id., § 5.6. The motor vehicle exclusion typically contains express exceptions, inter alia, for injuries occurring on the resident premises. Id. More extensive coverage for recreational vehicles such as large water craft and off-road type vehicles can usually be purchased separately or for an additional premium charge.[4]
In the instant ease, the homeowners policy contains a motor vehicle exclusion which reads as follows:
(1)Coverage E-Personal Liability and Coverage F-Medical Payments to Others do not apply to bodily injury or property damage:
[[Image here]]
(f) arising out of the ownership, maintenance, use, loading or unloading of:
[[Image here]]
|9(2) motorized land vehicles, including any trailers, owned or operated by or rented or loaned to any Insured.
This exclusion does not apply to:
(b) a motorized land vehicle designed for recreational use off pubic roads, not subject to motor vehicle registration, licensing or permits and:
ii. owned by any insured, while on an insured location; ...
“Insured location” and “Residence premises” are defined in Safeco’s Policy Definitions as follows:
(h) “Insured location” means:
(1) the residence premises;
(2) that part of any other premises, other structures and grounds, used by you as a residence and which is shown in your Policy Declarations. This includes any premises, structures and grounds which are acquired by you during the policy period for your use as a residence;
(3) any premises not owned by you which you have the right or privilege to use arising out of (h)(1) or (h)(2) above;
[[Image here]]
(o) “Residence premises” means:
(1) the one, two, three or four family dwelling, used principally as a private residence;
(2) other structures and grounds; or
(3) that part of any other building; where you reside and which is shown in your Policy Declarations.
According to appellants, the homeowners’ policy’s “while on an insured location” exception to the motor vehicle *201 use exclusion is ambiguous because it does not specifically require that the loss or accident occur on the insured location. Appellants urge this Court to adopt the interpretation given to this phrase by a Florida court in Meister v. Utica Mutual Ins. Co., 573 So.2d 128 (Fla.Dist.Ct.App. 1991).
In Meister, the appellate court found the phrase “on an insured location” to be ambiguous and declared that a reasonable interpretation of this phrase could include not just the place of the accident, which indisputably did not occur on an insured location, but also the location where |inthe ATV was stored or kept, which was in fact on the insured premises. The court in Meister, supra, also observed that to limit coverage for owned ATVs to accidents that occurred “on the insured location” would render coverage for ATVs illusory. This opinion, however, has been followed by very few courts in the United States, and has in fact been implicitly overruled by the very court that rendered it in Elliott v. State Farm Florida Ins.. Co., 61 So.3d 502 (Fla.Dist.Ct.App.2011).
We find no need for further clarifying language in the phrase “while on an insured location.” The homeowners policy contains a broad description of liability losses that are covered as well as when medical payments to others will be made. Thereafter, the policy contains a very specific list of liability losses or exclusions that are not covered, one of these being the motor vehicle use exclusion. The crucial inquiry is what exactly are the acts or occurrences that would trigger or exclude liability or coverage in the first place? The answer to this question is that coverage or exclusion from coverage is triggered upon the occurrence of bodily injury and/or property damage. Using the language from the motor.vehicle use exclusion, it is clear that (location aside) Danielle’s bodily injury occurred when the Rhino, driven by James, flipped over onto its side and pinned Danielle on the'pavement, and that this accident arose out of the use of a motorized land vehicle owned by an insured. There is nothing ambiguous about this whatsoever. See, Bumgardner, supra; Latino v. Jones, 11-0463 (La.App. 1st Cir.02/10/12), 91 So.3d 335.[5]
11/While on an insured location” is likewise itself neither ambiguous, nor does the interpretation given to it by the trial court create illusory coverage. In Latino, supra, a similar argument was urged 'and rejected! Plaintiffs’ six-year-old son Colby was injured while riding his bicycle on a cul-de-sac when he was struck by a golf cart driven by ten-year-old Victoria Jones. At issue was whether the Joneses’ homeowners policy provided coverage for Colby’s injuries. One argument advanced by plaintiffs was that the cul-de-sac and street fit the policy’s definition of an “insured location” because they were used “in connection with” the residence every time the golf cart was driven from the home to another location and back. The First Circuit rejected this argument, noting that it would lead to an absurd result by requiring coverage where none was intended, i.e., on any street that the cart drove as long as its final destination is another “insured location.” Latino, 91 So.3d at 341. In the instant case, Safeco clearly designed its policy exclusion to preclude all' personal liability coverage arising from the operation or use of a motor vehicle owned by an insured while not on an insured location. *202 A broad interpretation''of the exclusion such as that urged by appellants would increase’ rather than limit the insurance company’s risk and obligation and thus tend to defeat the apparent purpose of the exclusion, which is to require that an insured obtain specific liability insurance on recreational vehicles except under the very limited exceptions listed in the Impolicy. In other words, the purpose of such an exclusion is to confine the insurer’s geographic area of risk.[6]
Appellants next contend that there is coverage under the homeowners’ policy issued by Safeco because the accident did in fact occur at an “insured location” as this phrase is broadly defined in the policy. According to appellants, because the homeowners’ policy defines “insured location” as. including the residence premises and “any premises not owned by you which you have the right or privilege to use [,] ” Safeco can not now retroactively restrictively interpret this provision. In support, appellants rely on several out-of-state cases, including American Nat Property and Cas. Co. v. Sorensen, 362 P.3d 909 (Utah Ct.App.2013) (in which the court found that a cul-de-sac, a common area in a neighborhood, was an insured location); State Farm Fire and Cas. Co. v. MacDonald, 850 A.2d 707 (Pa.Super.Ct.2004), appeal denied, 581 Pa. 680, 863 A.2d 1148 2004) (in which the court found that a field adjacent to the homeowner’s property was an insured location); and Uguccioni v. U.S. Fidelity and Guar, Co., 408 Pa.Super. 511, 597 A.2d.l49 (1991) (in which the court found that a roadway in a private residential development was an insured location).
We have already found, no ambiguity in the Safeco policy’s definition of “insured location,” which includes (h)(1) the residence premises (1024 .Wedgewood Drive); (h)(2) that part of any other premises \ .. used by you as a' residence and which is shown in your -Policy Declarations, and (h)(3) any premises not owned by you which you have the right or privilege to 11s«se arising out of (h)(1) or (h)(2) above.... .The accident (and Danielle’s bodily.injuries) occurred on a cul-de-sac on a public street a half mile away from the Smiths’ home. For. the reasons discussed above and more thoroughly below, we decline to stretch interpretation of the scope of subsection (h)(3)’s permissive use language to find that a public roadway is an insured location in this case.
Other Louisiana courts addressing similar motor vehicle use exclusions have unequivocally held that, when accidents occur on public roads or adjacent property, away from the insured premises, there is simply no coverage, even when the public street where an accident has occurred is adjacent to or even used in connection with the residence. See, Latino, 91 So.3d at 341; Bumgardner, 806 So.2d at 949-50; Mahlum v. Baker, 25,876 (La.App.2d Cir.06/24/94), 639 So.2d 820, 823; Shatoska v. Whiddon, 468 So.2d 1314, 1317-18 (La. App. 1st Cir,1985), writ denied, 472 So.2d 35 (La.1985); and, Crowe v. State Farm Mutual Auto. Ins. Co., 416 So.2d 1376, 1381 (La.App. 3d Cir.1982). The policy concerns observed by the courts in Latino, supra, and Bumgardner, supra, together with the plain language of the exclusion, are the basis for the. trial court’s finding in this case. If we were to find that the location of the accident in this case, a public street a half-mile from the insured premises, was an insured location, then that would mean that any street on which *203 the Rhino was ridden would be an “insured location.” Clearly Safeco did not intend with this homeowners’ policy to give the Smiths.coverage for the Rhino except upon an insured location as set forth in the policy.
Finally, we briefly address the assertion that Danielle’s negligent entrustment and supervision claims against Dr. William Smith and Michael |14Smith áre separate from her other claims arising out of the recreational vehicle accident arid therefore not precluded by the policy’s motor yehicle use exclusion. Louisiana law is clear that in order for liability coverage to apply to such claims, the “operation” or “use” of a motor vehicle must not be essential to the asserted theory of liability. See, Otwell v. State Farm, Fire and Casualty Co., 40,142 (La.App.2d Cir.10/26/05), 914 So.2d 100, 106; Oaks v. Dupuy, 26,729 (La.App.2d Cir.04/05/95), 653 So.2d 165, 167-68, writ denied, 95-1145 (La.06/16/95), 655 So.2d 335; Mahlum, 639 So.2d at 826-27; and, Simmons v. Weiymann, 05-1128 (La.App. 1st Cir.08/23/06), 943 So.2d 423, 426-28. The trial court in the instant case found that, “[e]ven when this' Court assumes, arguendo, that the Smiths had a general duty not to entrust -the Yamaha Rhino ... to Mr. Johnson or a general duty to supervise the use of the vehicle, it is still clear that no personal injuries would have resulted to Ms. Schelmety absent the actual use of the vehicle. At the time of the accident, Mr. Johnson was. operating and using a motor land vehicle, the Yamaha Rhino. The duty in question arose from the use of the vehicle. The duty was breached when Mr. Johnson operated the vehicle in question in a reckless manner and while under the influence of alcohol. Therefore, the ‘use’ of the vehicle is a critical and essential element of [Danielle’s claims of negligent entrustment and supervision].” The trial court then found that there was no liability coverage under the Safeco policy for these claims. We agree.
| iaConclusion
For the reasons set forth above, the judgment of the trial court granting the motion for summary judgment filed by Safeco and dismissing--plaintiffs claims against the insurer is AFFIRMED. Costs of this appeal are to be split equally among plaintiff, Danielle Schelmety, and defendant, James Johnson.

. Since the accident, James has stayed and visited with the Smiths several times.

. The trial court, in its written reasons, noted that it “can find no cáse law that would regard such evidence as proof of residency in any situation.” Likewise, we found no case law, from Louisiana or any other state, that would support a finding that the evidence presented on this issue is sufficient to establish residency for purposes of insurance cov.erage. ,

. In fact, the declarations page on the umbrella policy issued to the Smiths specifically required a recreational vehicle liability policy with minimum coverage limits of $300,000 per occurrence.

. See also Massachusetts Property Ins. Underwriting Ass’n v. Wynn, 60 Mass.App.Ct. 824, 806 N.E.2d 447 (2004); DeWitt v. Nationwide Mut. Fire Ins. Co., 109 Ohio App.3d 716, 672 N.E.2d 1104 (1996); Allstate Ins. Co. v. Shofner, 573 So.2d 47 (Fla.Dist.Ct.App. 1990); Westchester Fire Ins. Co. v. Baughn, 257 So.2d 903 (Fla.Dist.Ct.App.1972).

. See, Shelter Mutual Ins. Co. v. Davis, 2006 WL 929239 (Iowa Ct.App.2006); see also, Wynn, supra; Shofner, supra; Baughn, supra.