IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100003-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (October 4, 2012) |
| John Vernon Cecil, | ) | |
| | ) | 2012 UT App 280 |
| Defendant and Appellant. | ) | |

-----

Fifth District, St. George Department, 091500546
The Honorable G. Rand Beacham

Attorneys:      Gary G. Kuhlmann and Nicolas D. Turner, St. George, for Appellant
               Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee

-----

Before Judges Davis, Thorne, and McHugh.

THORNE, Judge:

¶1      John Vernon Cecil appeals from his convictions of aggravated assault, a third degree felony, *see* Utah Code Ann. §§ 76-5-102, -103(1)(b) (2008); criminal mischief, a third degree felony, *see id.* § 76-6-106(2)(c) (Supp. 2012); and reckless driving, a class B misdemeanor, *see id.* § 41-6a-528 (2010).  We affirm.

# BACKGROUND[1]

¶2     On March 30, 2009, Michael Stevens was sitting in his car near the apartment where Cecil and his girlfriend, Anjelica Quintero, lived.  Stevens and Quintero had previously dated.  Stevens saw Cecil and Quintero speeding towards him in Quintero's truck, which Cecil was driving.  Stevens drove away, but Cecil passed him, slammed on his brakes, and shifted into reverse in an apparent attempt to hit Stevens.  Stevens managed to get out of the way and drove to a nearby car repair shop that was owned by Todd Evans.  Stevens stopped his car near a vehicle hoist behind the shop.

¶3     Cecil, who was pursuing Stevens, stopped Quintero's truck about fifteen feet away from the hoist.  Stevens got out of his car, stood behind the hoist, and put his hands up as if to signal "What's going on?"  Cecil's only response was to accelerate toward Stevens and crash into the hoist.  The hoist protected Stevens from being struck, but it was damaged in the collision.  Cecil then backed up and sped away.  As Stevens was explaining to Evans what had happened, Cecil returned to the parking lot, nearly striking Evans.  Evans testified that Cecil was revving his engine "as hard as I imagine an engine can rev" and had a look of intense anger on his face.  This time, Cecil succeeded in striking Stevens, who was able to brace himself on the front of the truck and push himself out of the way.  Cecil then fled the scene.

¶4     Cecil was charged with two counts of aggravated assault for attempting to strike Stevens and Evans with the truck, one count of criminal mischief for damaging the hoist, one count of reckless driving, and one count of leaving the scene of an accident.  A three-day jury trial was held in November 2009.  At the close of the State's case, Cecil made a motion to dismiss all of the charges against him.  The district court dismissed the count of leaving the scene of an accident but denied the motion as to the other charges.  The jury convicted Cecil on one count of aggravated assault upon Stevens, as well as the criminal mischief and reckless driving counts, and acquitted him of aggravated assault upon Evans.  Cecil now appeals.

---

1. "On appeal, we recite the facts in the light most favorable to the jury's verdict." *State v. Burk*, 839 P.2d 880, 882 (Utah Ct. App. 1992).

ISSUES AND STANDARDS OF REVIEW

¶5     On appeal, Cecil argues that there was insufficient evidence to convict him of criminal mischief for damaging the hoist because the only evidence was that he intended to strike Stevens, and there was no evidence that he intended to strike the hoist.  Cecil argues that the district court thus erred when it denied his motion to dismiss the criminal mischief charge.  He also argues that the jury's guilty verdict on that charge must be vacated for lack of evidence.  We apply the same standard of review to both of these arguments.  *See State v. Hamilton*, 2003 UT 22, ¶ 41, 70 P.3d 111 ("When evaluating whether the State produced sufficient 'believable evidence' to withstand a challenge at the close of the State's case in chief, we apply the same standard used when reviewing a jury verdict.").  Both the district court's denial of a motion to dismiss and the jury's verdict will be affirmed "'if upon reviewing the evidence and all inferences that can be reasonably drawn from it, the court concludes that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.'"  *Id.* (quoting *State v. Clark*, 2001 UT 9, ¶ 13, 20 P.3d 300).

¶6     Cecil also argues that the district court erred in refusing to allow him to use evidence of past criminal convictions, currently pending criminal charges, and an existing civil stalking injunction against Stevens to impeach Stevens's testimony and support Cecil's claim of self-defense.  "[W]e grant a trial court broad discretion to admit or exclude evidence and will disturb its ruling only for abuse of discretion . . . ."  *State v. Gallup*, 2011 UT App 422, ¶ 12, 267 P.3d 289 (alteration in original).  Further, "[i]n circumstances where evidence should have been admitted, it is reviewed for harmless error."  *State v. Colwell*, 2000 UT 8, ¶ 26, 994 P.2d 177.

¶7     Cecil also argues that his trial counsel provided him with ineffective assistance when counsel failed to interview or subpoena certain witnesses identified by Cecil and failed to acquire and then introduce into evidence alleged audio recordings of conversations between Stevens, Cecil, and Quintero.  "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law, which we review for correctness."  *State v. Fowers*, 2011 UT App 383, ¶ 15, 265 P.3d 832 (internal quotation marks omitted).

¶8    Finally, Cecil argues that the State willfully withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to produce the alleged recordings of Stevens, Cecil, and Quintero. "[A] *Brady* violation occurs only where the state suppresses information that (1) remains unknown to the defense both before and throughout trial and (2) is material and exculpatory, meaning its disclosure would have created a reasonable probability that the result of the proceeding would have been different." *State v. Pinder*, 2005 UT 15, ¶ 24, 114 P.3d 551 (internal quotation marks omitted). "We do not consider issues raised for the first time on appeal unless the [district] court committed plain error or exceptional circumstances exist." *State v. Bozung*, 2011 UT 2, ¶ 7 n.4, 245 P.3d 739 (alteration in original) (internal quotation marks omitted).[2]


ANALYSIS

I.  Cecil's Criminal Mischief Conviction

¶9    Cecil makes two related arguments challenging his conviction of criminal mischief. Both arguments rely on his assertion that there was no evidence presented at trial that he intended to damage the vehicle hoist. *See generally* Utah Code Ann. § 76-6-106(2)(c) (Supp. 2012) (stating that a person commits criminal mischief if he or she "*intentionally* damages, defaces, or destroys the property of another" (emphasis added)). First, he argues that the district court erred when it denied his motion to dismiss the

---

2.  Cecil also raises issues pertaining to a juror's brief observance of Cecil in handcuffs outside the courtroom and the district court's refusal to instruct the jury that the State had to prove Cecil's intent—and not merely his knowledge or recklessness—as regards his use of force for purposes of the aggravated assault charges. However, Cecil's appellate brief candidly concedes that these issues lack merit, and we decline to address them further. *See generally State v. Wetzel*, 868 P.2d 64, 70 (Utah 1993) ("[A] brief and fortuitous encounter of the defendant in handcuffs is not prejudicial and requires an affirmative showing of prejudice by the defendant." (alteration in original) (internal quotation marks omitted)); *State v. Speer*, 750 P.2d 186, 191 (Utah 1988) ("We have held that when charged under subsection (1)(b) of [Utah Code] section 76-5-103, aggravated assault can be committed by reckless conduct.").

criminal mischief charge for lack of evidence of his intent to damage the hoist. Second, he argues that there was insufficient evidence of his intent to damage the hoist to support the jury's verdict finding him guilty of criminal mischief. These arguments rely on Cecil's assertions on appeal that the "evidence was limited to the alleged fact that the defendant attempted to hit Mr. Stevens with a vehicle and missed and hit the hoist" and that "the only evidence presented was that the defendant attempted to run the vehicle [he] was driving into Mr. Stevens and inadvertently hit the hoist."

¶10     We cannot agree that Cecil's characterizations of the evidence are accurate. To the contrary, Stevens testified that Cecil stopped his vehicle ten to fifteen feet away from where Stevens was standing, "then stepped on the gas and just came full speed and crashed right into the engine hoist." Stevens testified, "[I]f this hoist wouldn't have been there, I would have got hit." On cross-examination, Stevens was asked to clarify whether "Cecil stopped and then drove again into the hoist or if he just . . . swerves and hits the hoist?" Stevens responded, "Yes, I came to a stop, stepped out of the vehicle. He came to a stop, was revving the motor while he was holding the brake and then he came and accelerated into the hoist."

¶11     Stevens's testimony that Cecil "accelerated into the hoist" from a stop ten to fifteen feet away and "crashed right into the engine hoist" is clearly adequate to support a finding that Cecil intentionally struck the hoist with Quintero's truck.[3] Furthermore, "a person is presumed to intend the natural and probable consequences of his acts." *State v. Sisneros*, 631 P.2d 856, 859 (Utah 1981) (internal quotation marks omitted). The natural and probable consequence of Cecil's crashing into the hoist was that the hoist would be damaged. Thus, the jury could reasonably infer that Cecil intended to

---

3. We agree with the State's observation that Cecil's ultimate motivation for striking the hoist may well have been a desire to harm Stevens rather than some independent desire to damage the hoist. *See generally Help v. Chevron U.S.A., Inc.*, 2009 UT 11, ¶ 33, 203 P.3d 962 (discussing the relationship between motive and intent and noting that "the legal definition of intent encompasses more than simply motive"). Nevertheless, there is evidence that Cecil intentionally struck the hoist in his attempt to harm Stevens.

damage the hoist.[4] *See State v. Robertson*, 2005 UT App 419, ¶ 15, 122 P.3d 895 ("[I]ntent . . . is a state of mind, which is rarely susceptible of direct proof[;] it can be inferred from conduct and attendant circumstances in the light of human behavior and experience." (internal quotation marks omitted)). Such an inference is entirely consistent with Cecil having the ultimate goal of harming Stevens, who was standing behind the hoist.

¶12    In light of Stevens's trial testimony, we can only conclude "that some evidence exists from which a reasonable jury could find that the elements of the crime [of criminal mischief] had been proven beyond a reasonable doubt." *See State v. Hamilton*, 2003 UT 22, ¶ 41, 70 P.3d 111. Accordingly, we affirm both the district court's denial of Cecil's motion to dismiss and Cecil's conviction of criminal mischief for intentionally damaging the hoist.

## II. Cecil's Other Arguments

¶13    Cecil raises other arguments alleging erroneous evidentiary rulings, ineffective assistance of counsel, and the State's failure to produce exculpatory evidence. However, we determine that Cecil's briefing on these issues is insufficient pursuant to rule 29(a) of the Utah Rules of Appellate Procedure. *See* Utah R. App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on."); *State v. Green*, 2004 UT 76, ¶ 13, 99 P.3d 820 ("Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority." (internal quotation marks omitted)).

---

4. Cecil suggests in his appellate briefing that the jury was improperly allowed to find "transferred intent," i.e., that under Utah Code section 76-2-105, Cecil's intent to strike Stevens transferred into an intent to strike the hoist. *See generally* Utah Code Ann. § 76-2-105 (2008) ("Where intentionally causing a result is an element of an offense, that element is established even if a different person than the actor intended was killed, injured, or harmed, or different property than the actor intended was damaged or otherwise affected."). However, the jury was not instructed on transferred intent, and we see nothing to indicate that the jury relied on that doctrine to reach its criminal mischief verdict.

¶14　In particular, Cecil has failed to demonstrate the harm or prejudice that is required in order to obtain relief on any of these arguments. *See generally State v. Pinder*, 2005 UT 15, ¶ 24, 114 P.3d 551 (stating that a *Brady* nondisclosure violation occurs only where disclosure "would have created a reasonable probability that the result of the proceeding would have been different" (internal quotation marks omitted)); *State v. Colwell*, 2000 UT 8, ¶ 26, 994 P.2d 177 ("In circumstances where evidence should have been admitted, it is reviewed for harmless error."); *State v. Maestas*, 2012 UT App 53, ¶ 57, 272 P.3d 769 (requiring a defendant to establish prejudice to succeed on a claim of ineffective assistance of counsel). Cecil's appellate briefing fails to explain what evidence was allegedly wrongfully excluded, what the uncalled witnesses would have testified to, or what exculpatory evidence was contained in the undisclosed tape recordings. It is impossible for us to conclude that the result of Cecil's trial would have been different absent the alleged errors when Cecil has not apprised us of the contents of the evidence that the jury allegedly should have been provided. *Cf. State v. Cooper*, 2012 UT App 211, ¶ 10, 283 P.3d 107 (mem.) (finding inadequate briefing where an appellant's brief "fail[ed] to identify the uncalled witnesses or what they allegedly would have testified to" and "fail[ed] to analyze why counsel's failure to call the witnesses constituted deficient assistance or would have resulted in a different outcome at trial").

¶15　Cecil suggests that the various pieces of evidence at issue in these arguments would have bolstered his self-defense argument by demonstrating acts of violence committed by Stevens prior to this incident and Cecil's reasonable fear of Stevens. However, even assuming that the evidence would have shown those things, we see little chance that it would have led the jury to find self-defense. Although the jury was instructed on self-defense, they were properly instructed that self-defense may be employed only against "imminent" unlawful force. *See generally* Utah Code Ann. § 76-2-402(1) (Supp. 2012) (governing self-defense). Regardless of Stevens's prior actions, there appears to have been little evidence that he presented an imminent threat to Cecil at the time of this incident.[5]

---

5. Cecil did not testify at trial. A police officer testified that both Cecil and Quintero had previously told him that Stevens was chasing them and that Stevens had approached their vehicle on foot in "a very aggressive manner" with a handgun visible in the front of his waistband. However, surveillance video showed Cecil chasing

(continued...)

¶16   We conclude that Cecil's arguments alleging improperly excluded evidence, ineffective assistance of counsel, and a *Brady* violation are inadequately briefed.  In particular, Cecil fails to explain how the evidence, testimony, and tape recordings at issue would have led to the reasonable likelihood of a different result at trial.  Accordingly, we decline to further address these arguments.


## CONCLUSION

¶17   There was evidence at trial from which a reasonable jury could have found beyond a reasonable doubt that Cecil intended to strike the hoist with his vehicle.  Accordingly, we affirm both the district court's denial of Cecil's motion to dismiss and the jury's guilty verdict on the charge of criminal mischief.  Cecil's other arguments either concede that no error occurred or are inadequately briefed.  For these reasons, we affirm Cecil's convictions below.


_____
William A. Thorne Jr., Judge


-----


¶18   WE CONCUR:


_____
James Z. Davis, Judge


_____
Carolyn B. McHugh, Judge

---

5.  (...continued)
Stevens into the parking lot, and Quintero testified at trial that there was no gun and that she had lied to the police at Cecil's urging.