2013 UT App 295

**AMERICAN NATIONAL PROPERTY & CASUALTY COMPANY, Plaintiff and Appellant,**

v.

**Cory SORENSEN and Stephen Dane Olsen, Defendants and Appellee.**

No. 20110221–CA.

Court of Appeals of Utah.

Dec. 12, 2013.

Rehearing Denied Jan. 31, 2014.

Stuart H. Schultz, Peter H. Barlow, and Sadé A. Turner, Salt Lake City, for Appellant.

D. David Lambert, Leslie W. Slaugh, and Jacob S. Gunter, Provo, for Appellee.

Judge MICHELE M. CHRISTIANSEN authored this Opinion, in which Judge J. FREDERIC VOROS JR. concurred, with opinion. Judge WILLIAM A. THORNE JR. dissented, with opinion.[1]

Opinion

CHRISTIANSEN, Judge:

¶1 This case involves a dispute over whether a homeowner's insurance policy excludes coverage for an all-terrain vehicle (ATV) accident that occurred in a residential subdivision. American National Property and Casualty Company (American National) appeals the district court's award of summary judgment in favor of the passenger in the ATV accident, Stephen Dane Olsen. We affirm.

BACKGROUND

¶2 The ATV accident giving rise to this action occurred in Highland, Utah on November 17, 2006. Karen Simmons had just purchased the ATV on the date of the accident. Simmons's seventeen-year-old son, Corey Sorensen, was driving the new ATV with two passengers, one of whom was Olsen, when it tipped over and landed on Olsen, injuring his leg.

¶3 Sorensen was driving the ATV near Simmons's residence in a residential subdivision known as "the Highlands." The Highlands is a "planned unit development" and includes a park located to the east of Simmons's property. The park is defined in the Highlands homeowners association's covenants, conditions, and restrictions (CC & Rs) as a "common area." Specifically, the CC &

---

1. Judge William A. Thorne Jr. participated in and voted on this case as a regular member of the Utah Court of Appeals. He retired from the court before this decision issued.

Rs define "common area" as "all the real property and improvements, including without limitation, any recreation facilities, landscaped areas and private roadways and walkways, which are owned by the Association for the common use and enjoyment of all of the Owners." For purposes of summary judgment only, the parties agreed that the accident occurred in the Highlands' common area.

¶ 4 At the time of the ATV accident, Simmons's residence was covered by a homeowner's insurance policy issued to her by American National. Simmons's homeowner's policy provided coverage up to the limits of liability for any claim for damages brought against her as an insured because of bodily injuries. The policy also covered medical expenses incurred by others injured "on the insured location" or injured "off the insured location, if the bodily injury ... [was] caused by the activities of any insured." Section II of Simmons's insurance policy also contained the following exclusions:

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

. . .

h. arising out of the ownership, maintenance, use, loading, or unloading of motor vehicles or all other motorized land conveyances, including any trailers, owned or operated by or rented or loaned to any insured.

This exclusion does not apply to a motorized land conveyance designed for assisting the handicapped or for the maintenance of an insured location ...:

. . .

k. arising out of the entrustment by any insured to any person any of the following:

. . .

(3) a motor vehicle or any other motorized land conveyance;

l. arising out of statutorily imposed vicarious parental liability for the actions of a child or minor using:

. . .

(3) a motor vehicle or any other motorized land conveyance.....[2]

Additionally, in subsection 8(c) of the insurance policy definitions, "motor vehicle" is defined, in relevant part, as "a motorized golf cart, snowmobile, or other motorized land vehicle owned by any insured and designed for recreational use off public roads, *while off an insured location.*" (Emphasis added.)

¶ 5 In 2007, as a result of the injuries he sustained in the ATV accident, Olsen sued Simmons, Sorensen, and American National in a personal injury action separate from the present action. After Olsen filed the personal injury action, Simmons filed a claim against her homeowner's policy with American National. Following an investigation into the accident, American National denied Simmons's claim for coverage. Then, in May 2008, American National filed the present action against Sorensen and Simmons and filed an amended complaint in March 2009 adding Olsen as a defendant. American National sought a declaratory judgment that it did not have a duty to defend Simmons and Sorensen and that the insurance policy excluded coverage for Olsen's injuries resulting from the ATV accident.

¶ 6 American National and Olsen filed cross-motions for summary judgment. In its motion for summary judgment, American National asserted that the insurance policy unambiguously excluded coverage pursuant to the motor vehicle exclusions contained in the policy because an ATV falls within the policy's definition of a motor vehicle and the bodily injury suffered by Olsen resulted from a motor vehicle accident. In his combined cross-motion for summary judgment and opposition memorandum, Olsen argued that the motor vehicle exclusions did not apply to the ATV accident, because the accident occurred on an "insured location." Thus, Olsen argued that the policy's exclusions were not triggered because the ATV did not fall within

**2.** Because exclusion (1)(h), exclusion (1)(k), and exclusion (1)(*l*) of Section II all implicate the definition of "motor vehicle," which is critical to this analysis, we refer to the exclusions collectively as the "motor vehicle exclusions."

the policy's definition of a motor vehicle, which only defined an ATV as a vehicle "while off an insured location."

¶ 7 The district court denied American National's motion for summary judgment, determining that the injuries suffered by Olsen in the ATV accident were not excluded from coverage.[3] The district court concluded that the undisputed material facts

> establish that the common area where the accident occurred is an "insured location" under Simmons'[s] homeowner's insurance policy. Even though the vehicle was a motorized land vehicle designed [for] recreational use off public roads, it was operated on an insured location. Coverage is therefore not excluded under the policy.

On January 27, 2011, the court entered a declaratory judgment denying American National's motion for summary judgment, explaining, in relevant part,

> 1. The material facts pertaining to the issues raised in the pleadings are undisputed, and based on those facts, the Court concludes that the accident occurred at an "insured location."
>
> 2. The insurance policy's exclusions from coverage asserted by the plaintiff do not apply....
>
> . . . .
>
> 4. Because the accident occurred at an "insured location," the policy of insurance issued by [American National] to ... Simmons provides coverage for the accident in question, and [American National] has a duty to defend Sorensen and Simmons and to cover losses sustained by them as a result of the accident in question to the extent of the policy limits.

American National appeals.

## ISSUE AND STANDARD OF REVIEW

■ ¶ 8 American National argues that the district court erred in denying its motion for summary judgment and in ruling that the insurance policy unambiguously provides cov-

erage for the ATV accident. "A grant of summary judgment is proper when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." *American Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 188 (Utah 1996) (citing Utah R. Civ. P. 56(c)). With respect to the district court's interpretation of the insurance policy, "[a]n insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts." *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993). "The district court's construction of contract language is given no particular weight and is reviewed for correctness as a matter of law." *Doctors' Co. v. Drezga*, 2009 UT 60, ¶ 9, 218 P.3d 598.

## ANALYSIS

¶ 9 American National's central argument is that the district court erroneously determined that it had a duty to defend Sorensen and Simmons and to provide coverage under the policy. Because the accident occurred on the common area of the Highlands development, rather than on Simmons's property, American National contends that the ATV accident did not occur on an "insured location." And if the accident did not occur on an "insured location," the ATV falls within subsection 8(c)'s definition of "motor vehicle" and Simmons's claim is consequently barred by the motor vehicle exclusions. American National argues, therefore, that the district court erred in ruling that the accident occurred on an "insured location" as defined under the homeowner's policy.

¶ 10 In the alternative, American National argues that even if we determine that the common area of Simmons's residential subdivision is an "insured location" under the policy, no coverage exists pursuant to the motor vehicle exclusions because the ATV is also a "motorized land conveyance" within the meaning of the policy. American National

---

**3.** The district court's memorandum decision denying American National's motion for summary judgment was silent as to the resolution of Olsen's cross-motion for summary judgment, as was the district court's declaratory judgment.

However, in this matter, by denying plaintiff American National's motion as a matter of law, the district court necessarily granted Olsen's cross-motion.

contends that although the policy does not define "motorized land conveyance," according to a common-sense definition, an ATV is clearly a motorized land conveyance. And because the "while off an insured location" language appears only in the definition of a "motor vehicle," that limitation does not apply to motorized land conveyances. Thus, American National argues that the motor vehicle exclusions apply regardless of whether the accident occurred on or off an insured location.[4]

¶ 11 Resolution of both arguments requires our interpretation of the policy language. Although no Utah court has specifically analyzed the policy language at issue, we have the benefit of several longstanding principles of law from which to analyze the pertinent policy language. First, "[i]nsurance policies are generally interpreted according to rules of contract interpretation." *Utah Farm Bureau Ins. Co. v. Crook,* 1999 UT 47, ¶ 5, 980 P.2d 685. As we would for contract language, we "interpret words in insurance policies according to their usually accepted meanings and in light of the insurance policy as a whole" *Id.* Furthermore, "[p]olicy terms are harmonized with the policy as a whole, and all provisions should be given effect if possible." *Id.*

¶ 12 Second, " 'insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance.' " *Fire Ins. Exch. v. Oltmanns,* 2012 UT App 230, ¶ 6, 285 P.3d 802 (quoting *United States Fid. & Guar. Co. v. Sandt,* 854 P.2d 519, 521–22 (Utah 1993)). " 'It follows that ambiguous or uncertain language in an insurance contract that is fairly susceptible to different interpretations should be construed in favor of coverage' and 'provisions that limit or exclude coverage should be strictly construed against the insurer.' " *Id.* (quoting *Sandt,* 854 P.2d at 522–23); *accord LDS*

*Hosp. v. Capitol Life Ins. Co.,* 765 P.2d 857, 858 (Utah 1988); *Browning v. Equitable Life Assurance Soc'y,* 94 Utah 570, 80 P.2d 348, 352 (1938). Further, "[i]n strictly construing exclusions, we give them effect only when they use 'language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided.' " *Fire Ins. Exch.,* 2012 UT App 230, ¶ 6, 285 P.3d 802 (quoting *Crook,* 1999 UT 47, ¶ 5, 980 P.2d 685).

¶ 13 Additionally, once the insured has established the right of coverage under the insuring clause and liability coverage is triggered, the insurer has the burden to demonstrate that exclusions exist under which it can deny coverage. As explained in *Browning,*

When an insured claims a right to recover under the accident provisions of the policy, all he need do is bring himself within the field therein defined. . . . He then has brought himself within the policy, and the terms thereof have been met. . . . When he brings himself within the insuring clause he has made his case . . . and any exceptions or conditions which would then deny him relief, take him out of the indemnity provisions, [or] render them inoperative as to him, are matters of defense, and the burden thereof rests upon the insurer. . . . [L]imitations, exceptions or conditions which may relieve the insurer from liability, which may be set forth in the policy outside of the language of the insuring clause, or which may exist outside of the policy entirely, must be made and established by the insurer to escape liability thereunder.

80 P.2d at 350–51. With these principles in mind, we first consider whether the Highlands common area on which the accident occurred was an insured location.

4. On summary judgment, Olsen argued that even if the district court ruled that the ATV accident occurred off an insured location, and thus that the ATV was a motor vehicle, the exception to the Section II(1)(h) motor vehicle exclusion—stating that the "exclusion does not apply to a motorized land conveyance designed for assisting the handicapped or for the maintenance of an insured location"—applied because the ATV was used for the maintenance of the insured location. On appeal, American National argues that the district court erred in failing to rule that the undisputed evidence established that Olsen's use of the ATV did not qualify under this exception. In light of our resolution of the insured location issue, we need not reach this issue.

### I. The Common Area Is an Insured Location.

¶14 American National argues that it can deny liability coverage under any of the motor vehicle exclusions contained in the policy because the accident occurred off an insured location and the ATV therefore qualifies as a motor vehicle. As explained below, we do not agree with American National's interpretation of the term "insured location."

¶15 According to the policy, all three of the motor vehicle exclusions are triggered by the insured's use or entrustment of a "motor vehicle." The applicable definition of "motor vehicle" is found in subsection 8(c) of the policy's definitions and includes "a motorized golf cart, snowmobile, or other motorized land vehicle owned by any insured and designed for recreational use off public roads, *while off an insured location.*" (Emphasis added.) The parties do not dispute that the ATV is a "motorized land vehicle" "owned by an insured" and "designed for recreational use off public roads." Rather, they dispute only whether the ATV accident occurred on or "off an insured location," or in other words, whether the common area where the ATV accident occurred is an insured location.

¶16 Relevant to our inquiry, the policy defines the term "insured location" as,

a. the residence premises;

b. the part of any other premises, other structures, and grounds, used by you as a residence and which is shown in the Declarations, or which is acquired by you during the policy period for your use as a residence;

c. any premises used by you in connection with the premises included in [a or b above];....

No Utah appellate court has specifically addressed whether the common area of a residential subdivision is an "insured location." But courts in several other jurisdictions have considered the question of what constitutes an "insured location," and we look to their analyses and to the policy's language and structure to guide our determination. *See Arndt v. First Interstate Bank of Utah, NA,* 1999 UT 91, ¶17, 991 P.2d 584 (explaining that in the absence of Utah precedent, appel-

late courts look to Utah statutes and "case law from other jurisdictions for guidance"). Courts in other jurisdictions have adopted several different tests to determine whether a location is used in connection with the residence premises. These tests include the "repeated use," "integral use," "property ownership and legal right to use," "foreseeable use," and "actual use" tests. In *Arrowood Indemnity Co. v. King,* 605 F.3d 62 (2d Cir.2010), the Second Circuit certified several questions relevant to interpretation of an insurance policy to the Connecticut Supreme Court, and in presenting its questions, surveyed the case law and provided a helpful explanation of some of these tests. *See id.* at 71–77; *see also Royal Indem. Co. v. King,* 512 F.Supp.2d 117, 126–27 (D.Conn.2007); *Arrowood Indem. Co. v. King,* 304 Conn. 179, 39 A.3d 712, 719–23 (2012). We provide a summary of these tests to illustrate the widely-varied interpretations of similar policy language.

¶17 One test that has been applied to determine if a motor vehicle was located on an "insured location" and any premises "used in connection with" the resident premises is whether the insured repeatedly used the area where the accident occurred in connection with the residence. *See, e.g., Allstate Ins. Co. v. Drumheller,* 185 Fed.Appx. 152, 160 (3d Cir.2006) (holding that an ATV accident that occurred 800 yards from the residence on a sewer easement that was not the insured's property, was covered under the policy as occurring on an "insured location" because "[the insured's] regular recreational use of the property in question was 'in connection with' his residence"); *Farmers New Century Ins. Co. v. Angerson,* No. 4:04–CV–2608, 2008 WL 238622, at *14 (M.D.Pa. Jan. 22, 2008) (concluding that an ATV accident that occurred on a path near the insured's residence was covered as occurring on an insured location because the insured and his son "made frequent use of the area in which the accident occurred," "repeatedly [riding] the ATV from their property into the adjacent woods and back for recreational and home-improvement purposes"); *Nationwide Mut. Ins. Co. v. Prevatte,* 108 N.C.App. 152, 423 S.E.2d 90, 92 (1992) (holding that an ATV accident that

occurred on the part of a trail owned by the insureds' neighbor was an insured location because the insureds used the trail "in connection with [their] residence" for several years and always started and ended using the trail from their property); *State Farm Fire & Cas. Co. v. MacDonald*, 850 A.2d 707, 710–11 (Pa.Super.Ct.2004) (determining that an ATV accident that occurred on adjacent land not owned by the insured was covered because the insured "repeatedly rode his ATV from his property onto the adjacent field and back" and had therefore "used the adjacent field in connection with his residence premises").

¶ 18 Another test is whether the accident occurred in a location that was integral to the insured's use of the residence. *See, e.g., Massachusetts Prop. Ins. Underwriting Ass'n v. Wynn*, 60 Mass.App.Ct. 824, 806 N.E.2d 447, 451–52 (2004) (holding that the policy did not provide coverage for an ATV accident that occurred on a beach, not owned by the insured, which was located across a stream and a parking lot, thus rejecting the repeated use test and stating, "the term 'insured location' is intended and appropriately understood to be limited to the residence and premises integral to its use as a residence"); *Illinois Farmers Ins. Co. v. Coppa*, 494 N.W.2d 503, 506 (Minn.Ct.App.1993) (concluding that where the ATV accident occurred in an adjacent hayfield not owned by the insured, "'insured location' was not meant to describe adjacent, non-owned land on which an ATV might be used"). A related approach to consider is the foreseeability of the use of the site of the accident. *See, e.g., Utica Mut. Ins. Co. v. Fontneau*, 70 Mass. App.Ct. 553, 875 N.E.2d 508, 514 (2007) (analyzing the character of use of a dirt track between two owned properties as well as the distance between the residence and the accident site to conclude that the risk associated with that activity and site was reasonably foreseeable to the insurance company and was, therefore, a covered location and a connected activity).

¶ 19 Another common determination in an "insured location" analysis is the ownership or legal right to use the area where the accident occurred. Courts using this approach generally conclude that ownership or the legal right to use an area weighs in favor of determining that the area is an insured location. *See, e.g., Uguccioni v. United States Fid. & Guar. Co.*, 408 Pa.Super. 511, 597 A.2d 149, 150 (1991) (holding that a private street used to access the insured residence in a private residential development was an insured location for coverage of an ATV accident occurring on the street); *Northern Sec. Ins. Co. v. Rossitto*, 171 Vt. 580, 762 A.2d 861, 864–65 (2000) (holding that an ATV accident that occurred on the insureds' right-of-way easement leading to their insured "camp" was covered because "the term 'insured location' encompasse[d] [the insureds'] right-of-way").

¶ 20 Related to the question of whether the insured has a legal right to the site of the accident, is a determination of whether the site was owned publicly, or privately by someone other than the insured. This issue often arises in conjunction with homeowners associations. *See, e.g., United Servs. Auto. Ass'n v. Parry*, 158 Ariz. 83, 761 P.2d 157, 158–60 (App.1988) (concluding that the insurance policy did not cover a go-cart accident that occurred when a boy landed in a private residential development's water retention basin; even though that area was a "common area" of the development, it was not an insured location because it was designed for "run-off" and, as such, was not a "premise" and because it was some distance from the insured's residence); *Arrowood Indem. Co. v. King*, 304 Conn. 179, 39 A.3d 712, 719–23 (2012) (holding that the dead-end road where the ATV accident occurred was not an insured location because according to the warranty deed for the insured's homeowners association, the dead-end road was not one of the roads on which the insured had a right to travel, because it was not a private road within the private residential development between the insured's residence and the public road); *Elliott v. State Farm Fla. Ins. Co.*, 61 So.3d 502, 505 (Fla.Dist.Ct.App.2011) (concluding that the insurance policy did not cover a golf cart accident that occurred a few blocks from the residence on a private road in a gated community); *Shelter Mut. Ins. Co. v. Davis*, No. 05–0456, 2006 WL 929239, at *5 (Iowa Ct.App. Apr. 12, 2006) (holding that a

road within a homeowners association on which an ATV accident occurred was the "functional equivalent" of a public road).

¶ 21 In determining whether the common area in the Highlands development is an "insured location," we are guided by the cases set forth above and agree that an ownership interest in the area on which the accident occurred is determinative here. We are also bound by the directive in Utah law to construe the policy "liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purposes of insurance." *Fire Ins. Exch. v. Oltmanns*, 2012 UT App 230, ¶ 6, 285 P.3d 802 (citation and internal quotation marks omitted). The policy definition of "insured location" has no contiguity requirement, and therefore, there is no clear language in the policy that excludes the common area from the definition of an insured location simply because it is not contiguous with the residence premises. Also, even though the policy defines "insured location" as "any premises used by [the insured] in connection with" "the residence premises" or "the part of any other premises," this definition is not contingent upon repeated use by the insured and we see no other basis in the policy language to impose such a requirement here. The policy does not further define "premises" apart from residence premises or require that the premises be subject to a particular property right. Instead, the policy provides only that an insured location is "any premises used by [the insured] in connection with" the "residence premises" or "the part of any other premises, other structures, and grounds, used by [the insured] as a residence."

¶ 22 Accordingly, the policy language defining "insured location" and "any premises used ... in connection with" the residence premises "is fairly susceptible to different interpretations." *See id.* (citation and internal quotation marks omitted). We therefore liberally construe the provisions in favor of the insured. *See id.* Moreover, because the insured location provision arises in the definition of "motor vehicle," which itself arises in the motor vehicle exclusions from liability coverage, we strictly construe these exclusions against the insurer. *See id.* ("[P]rovi-sions that limit or exclude coverage should be strictly construed against the insurer." (citation and internal quotation marks omitted)). We give effect to the motor vehicle exclusions, and thus to the motor vehicle definition, only to the extent "they use 'language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided.'" *See id.* (quoting *Utah Farm Bureau Ins. Co. v. Crook*, 1999 UT 47, ¶ 5, 980 P.2d 685).

¶ 23 Therefore, after considering the language of the policy in this case, the policy as a whole, the undisputed facts, and the above factors, we interpret "any premises used by [the insured] in connection with" "the residence premises" or "the part of any other premises, other structures, and grounds, used by [the insured] as a residence" in favor of coverage. Based on the CC & Rs, "Every owner shall have a right and easement of ingress and egress and of enjoyment in, to and over the Common Area which shall be appurtenant to and shall pass with title to every Lot...." Further, although "lot" is limited to a residential lot and specifically excludes the common area, every lot owner is a member of the homeowners association, and that membership "shall be pertinent to and may not be separated from the fee Ownership of such Lot," which means that every lot owner has a right of enjoyment to the common area. Homeowners within the association therefore have at least some type of ownership interest in and right to use the common area in connection with their residential premises. These factors weigh in favor of the common area being an insured location. To the extent it is a close question, we construe the policy in favor of coverage.

¶ 24 We therefore conclude that the insured in this planned development would have reasonably expected that an ATV accident in the common area would be covered under the policy because based on the CC & Rs, it was a premises used in connection with the residence premises. We recognize that resolution of this issue presents a close question, but given the connection between the residential premises and the common area for a homeowner's use and enjoyment of the

property, we determine that the common area is an insured location for purposes of coverage.

## II. The Motor Vehicle Exclusions Do Not Exclude Coverage Under the Circumstances of this Case.

■ ¶ 25 American National alternatively argues that even if the court determines that the common area is an insured location, it must still deny coverage for the accident under the motor vehicle exclusions.[5] American National asserts that the ATV is not only a "motor vehicle" but also a "motorized land conveyance." The policy does not separately define motorized land conveyance, but the term is included in the motor vehicle exclusions. Exclusion (1)(h) states that coverage is excluded for bodily injury "arising out of the ownership, maintenance, use, loading, or unloading of motor vehicles or all other motorized land conveyances." Exclusions (1)(k) and (1)(*l*) provide that coverage is excluded for bodily injury "arising out of the entrustment by any insured to any person" of a motor vehicle or motorized land conveyance or "arising out of statutorily imposed vicarious parental liability for the actions of a child or minor using" "a motor vehicle or any other motorized land conveyance."

¶ 26 According to American National, because an ATV is commonly defined as a motorized land conveyance, it does not fall within subsection 8(c)'s definition of "motor vehicle." Subsection 8(c)'s definition of "motor vehicle" hinges on whether the vehicle is used "while off an insured location." American National contends, therefore, that regardless of whether the common area is an insured location, because the ATV is a motorized land conveyance, it is not subject to the "insured location" limitation of the motor vehicle definition.

¶ 27 As previously noted, "[i]n strictly construing exclusions, we give them effect only when they use language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." *Fire Ins. Exch. v. Oltmanns*, 2012 UT App 230,

¶ 6, 285 P.3d 802 (citation and internal quotation marks omitted). An ATV may intuitively be a "motorized land conveyance." However, that term is not defined in the policy. Nor does the policy clearly and unmistakably communicate that use of a motorized land conveyance excludes coverage even when operated on an insured location. Due to this ambiguity and the similarity of the terms, the policyholder may believe that a motorized land conveyance is also a motor vehicle, subject to the "motor vehicle" definition providing that "a motorized golf cart, snowmobile, or other motorized land vehicle owned by any insured and designed for recreational use off public roads, while off an insured location," and may believe the corollary that a "motorized land vehicle owned by an insured and designed for recreational use off public roads, while [on] an insured location" is *not* a motor vehicle. Accordingly, we construe this "ambiguous or uncertain language ... that is fairly susceptible to different interpretations ... in favor of coverage." *See id.* (citation and internal quotation marks omitted). We therefore conclude that the motor vehicle exclusions do not exclude coverage under the circumstances of this case.

## CONCLUSION

¶ 28 Pursuant to our interpretation of the insurance policy, the common area on which the ATV accident occurred is an insured location. Therefore, American National has a duty to defend Sorensen and Simmons and to provide coverage to them up to the policy limits for any losses arising from the ATV accident in accordance with the insurance policy. Accordingly, we affirm the district court's denial of American National's motion for summary judgment.

VOROS, Judge (concurring specially):

¶ 29 I concur in the result reached by the lead opinion and concur in that opinion except as to Part II. I would not reach the merits of American National's "motorized land conveyance" argument. American National contends (1) that the ATV is a "motor-

---

**5.** On appeal, Olsen argues that American National did not preserve this issue. However, American National clearly presented this argument below.

ized land conveyance" and (2) that harms arising from use of a "motorized land conveyance" are excluded even if the use occurred on the insured location. The dissent accepts this argument. The lead opinion seems to accept the first step of the argument but rejects the second. I would not reach the argument, because any district court error on this point was invited.

¶ 30 Under the invited error doctrine, "a party cannot take advantage of an error committed at trial when that party led the trial court into committing the error." *State v. Geukgeuzian*, 2004 UT 16, ¶ 9, 86 P.3d 742 (citation and internal quotation marks omitted). That happened here. In arguing the summary judgment motions, American National agreed with the district court that "the question is whether this common area is premises"; that "this kind of vehicle" is covered "when it's on the premises"; that if "the [Highlands] common area is part of the premises, there's liability"; and that if "the common area is premises, ... those other exclusions don't apply."[6] Having assured the district court that coverage is excluded only if the accident occurred off the insured premises, American National may not be heard on appeal to argue that coverage is excluded even if the accident occurred on the insured premises.

THORNE, Judge (dissenting):

¶ 31 I respectfully dissent from the majority opinion because I disagree with its conclusion that the definition of an "insured location" under Simmons's homeowner's policy is broad enough to include the common area where Olsen was injured in this case. Further, I agree with American National's argument that coverage is excluded under the policy because the ATV in this case is either a "motor vehicle," a "motorized land conveyance," or both. Accordingly, I would reverse the judgment of the district court and remand this matter for the entry of judgment in favor of American National.

¶ 32 The policy language, as it applies to this case, defines an "insured location" to include any premises "used by [Simmons] in connection 'with" the residence premises. The majority opinion concludes that this definition is "fairly susceptible to different interpretations," *see supra* ¶ 28 (citation and internal quotation marks omitted), and must therefore be construed to include the location where Olsen was injured. I disagree.

¶ 33 I find the reasoning of *Massachusetts Property Insurance Underwriting Association v. Wynn*, 60 Mass.App.Ct. 824, 806 N.E.2d 447 (App.Ct.2004), to be persuasive on this issue. In *Wynn*, the party seeking coverage argued that a beach was an insured location because it was used "in connection with" an insured residence. *See id.* at 451. The beach was owned by the insured's homeowners association and was located less than 500 feet from the residence, and the insured regularly used the beach. *See id.* The court concluded that the beach was not used in connection with the residence premises, stating,

> We think that Wynn's proffered interpretation proves too much and, if adopted, would render the definition of "insured location" meaningless and provide no discernible geographical limit to coverage. The term "insured location" and its accompanying reference to "[a]ny premises used ... in connection with" the residence premises is circumscribed by an obvious and necessary geographic limitation. The definition is not meant to encompass adjacent, nonowned land on which an ATV might be used any more than it is intended to include parks or recreational facilities in proximity to the residence that the insured may enjoy and use regularly. Such locations are neither intended nor reasonably understood to be "insured locations" under a homeowner's policy.

*Id.* (alteration and omission in original). The court concluded that "the term 'insured location' is intended and appropriately understood to be limited to the residence and premises integral to its use as a residence." *Id.* at 452.

¶ 34 I agree with this analysis and would hold that, for purposes of the definition of an

6. While denying generally that it invited error, American National did not address these state-

ments in its briefs or in oral argument before this court.

insured location under the policy, premises are used in connection with a residence only when their use is "integral to [the residence's] use as a residence." *See id.* Nothing in the record before us suggests that Simmons's use of the common area where Olsen was injured could be characterized as integral to Simmons's use of her residence[7] I would therefore conclude, as a matter of law, that the common area was not an insured location under the policy.

¶ 35 I also agree with American National's argument that, regardless of whether the common area is an insured location, the policy excludes coverage for Olsen's injuries. The policy provides that coverage is excluded for bodily injuries "arising out of the ownership, maintenance, use, loading, or unloading of motor vehicles *or all other motorized land conveyances,* including any trailers, owned or operated by or rented or loaned to any insured." (Emphasis added.) It is undisputed in this case that Olsen's injuries arose from the use of an ATV and that the ATV was owned by Simmons, an insured. Thus, coverage is excluded if the ATV is either a motor vehicle or a motorized land conveyance.

¶ 36 I would conclude that the ATV meets the policy's definition of a motor vehicle because, at the time of the accident, it was a "motorized land vehicle owned by any insured and designed for recreational use off public roads, while off an insured location." However, even if the ATV does not meet this definition because it was on an insured location at the time of the accident, it clearly falls within the category of "all other motorized land conveyances."[8] Thus, the policy clearly excludes coverage for Olsen's injuries regardless of whether the common area is an insured location.

¶ 37 For these reasons, I respectfully dissent from the majority opinion.

---

7. In *Wynn,* the court expressly noted that the injured party had presented no evidence that the insured had easement rights to the beach under his deed. *Massachusetts Prop. Ins. Underwriting Ass'n v. Wynn,* 60 Mass.App.Ct. 824, 806 N.E.2d 447, 451 n. 6 (2004). Here, it is undisputed that Simmons did possess an easement to use the common areas, including the area where Olsen was injured. However, the policy defines insured premises in terms of *how* the premises are used, not whether the use is under a legal right. For this reason, I would not distinguish this case from *Wynn* on the basis of Simmons's easement.

8. The policy does not provide a definition for the term "motorized land conveyance." However, looking at its plain language, the term clearly encompasses the ATV in this case: the ATV has a motor, it conveys persons, and it is used on land.