Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,157-CA
No. 56,158-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

\* \* \* \* \*

No. 56,157-CA

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY AS PARTIAL
SUBROGEE OF TILLMAN
CARROLL
             Plaintiff-Appellee

versus

ETHAN WILLIAMS
CHUMLEY AND
HOUSTON CASUALTY
COMPANY
             Defendants

No. 56,158-CA

TILLMAN CARROLL AND
TWANA CARROLL,
INDIVIDUALLY, AND AS
HUSBAND AND WIFE
             Plaintiffs-Appellees

versus

ETHAN WILLIAMS
CHUMLEY, CHUMLEY
PROPERTY MANAGEMENT,
LLC, CHUMLEY
PROPERTIES, LLC,
AQUATECH INDUSTRIES,
LLC & HOUSTON
SPECIALTY INSURANCE
COMPANY
             Defendants

\* \* \* \* \*

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court Nos. 613,328 and 613,331

Honorable Christopher T. Victory, Judge

\* \* \* \* \*

AUZENNE LAW FIRM, LLC                    Counsel for
By: Stacy Christopher Auzenne            Defendants-Appellants,
                                         Mary Elizabeth
                                         Chumley, Ethan
                                         Williams Chumley,
                                         Aquatech Industries,
                                         LLC, and Dr. Edward D.
                                         Chumley

JAMES EVERET BROUILLETTE                 Counsel for
                                         Plaintiff-Appellee,
                                         State Farm Mutual
                                         Automobile Insurance
                                         Company

ALL AMERICAN LAW FIRM OF LA              Counsel for
By: Wade Thomas Visconte                 Plaintiffs-Appellees,
                                         Tilman Carroll and
                                         Twana Carroll

CHARLES E. TABOR

PETTIETTE, ARMAND,                       Counsel for
DUNKELMAN, WOODLEY                       Defendant-Appellee
& CROMWELL, LLP
By: Donald James Armand Jr.
     Meredith P. Bro

* * * * *

Before STONE, THOMPSON, and HUNTER, JJ.

**HUNTER, J.**

Plaintiffs, Tillman Carroll and Twana Carroll, and defendants, Ethan Williams Chumley, Mary Elizabeth Chumley, Dr. Edward G. Chumley, Chumley Property Management, LLC, Chumley Properties, LLC, and Aquatech Industries, LLC, appeal a district court's ruling granting summary judgment in favor of defendant, Houston Specialty Insurance Company. For the following reasons, we affirm.

## FACTS

On January 2, 2018, Tillman Carroll, who was driving a 2004 Toyota Camry, was stopped at a stop sign at an intersection of Southern Loop and Linwood Avenue in Shreveport, Louisiana. Defendant, Ethan Williams Chumley ("Ethan"), who was driving a 2011 Ford F-350 pickup truck, collided with the back of Carroll's vehicle.[1] The truck Ethan was driving was owned by his employer, Aquatech Industries, LLC ("Aquatech"), and covered by a general automobile liability insurance policy issued by Houston Specialty Insurance Company ("HSIC"). Aquatech, a tilapia farm, was one of the companies owned and operated by Ethan's parents, Dr. Edward Gary Chumley and Mary Elizabeth Chumley ("the Chumleys"), and Ethan was employed as the manager.

Carroll sustained serious injuries as a result of the accident, and his vehicle was rendered a total loss. HSIC refused to accept liability based on its suspicion the Chumleys had committed material misrepresentations, with

---

[1] Ethan, who did not have a valid driver's license, failed a breathalyzer test and was charged with DWI, fourth offense, or subsequent offense. In addition to four prior DWI convictions, Ethan's motor vehicle record revealed prior traffic violations for driving with a suspended license, reckless operation, careless operation, unauthorized use of a movable, and aggravated obstruction of a highway.

intent to deceive, in the original application for insurance and in the renewal application. Pursuant to an automobile insurance policy issued to Carroll, State Farm Mutual Automobile Insurance Company ("State Farm") paid the actual cash value of Carroll's totaled vehicle and other related expenses.

On December 14, 2018, Carroll and his wife, Twana Carroll, filed a personal injury lawsuit, naming as defendants Ethan, Aquatech, Chumley Property Management, LLC, and Chumley Properties, LLC (collectively "Aquatech"), and HSIC. The Carrolls alleged Ethan had access to, and frequently used, vehicles owned by Aquatech. The Carrolls later amended their petition to add Dr. and Mrs. Chumley as defendants, asserting claims of vicarious liability. The Carrolls alleged the Chumleys were aware of Ethan's multiple DWI and traffic-related offenses, but they allowed him to operate vehicles without instituting safeguards. They also alleged the Chumleys engaged in a pattern of behavior "that enabled their son to continue drinking and driving," by providing inaccurate and incomplete information in the application for insurance for the HSIC policy.

On December 20, 2018, State Farm, as partial subrogee of Carroll, filed a lawsuit against Ethan and HSIC, seeking reimbursement for sums it paid to Carroll for the total loss of his vehicle. The district court consolidated the lawsuit filed by the Carrolls with the lawsuit filed by State Farm.

HSIC answered the petitions admitting it issued a policy covering the F-350 pickup truck, and Ethan was driving the vehicle at the time of the accident. HSIC also raised the following affirmative defenses:

> (1) The policy was "annulled and voided as a result of material misrepresentations in the application for the policy, at other material times and/or in connection with claims arising from the

2

accident, which misrepresentations were made with the intent to deceive."

(2) The named insureds *** by and through their authorized officers, agents and/or representatives, and Ethan Chumley, made material misrepresentations and/or fraudulent statements and representations, with the intent to deceive HSIC, in the application for the policy. Said misrepresentations were material to the underwriting decisions on the policy, and but for the misrepresentations, HSIC would not have issued the policy.

On July 21, 2023, HSIC filed a motion for summary judgment alleging the Chumleys "and/or other representatives, made multiple, ongoing false statements and concealed facts from [HSIC] that Ethan Chumley, who had a long, extensive history of felony traffic offenses and had no valid driver's license, was regularly allowed to and did drive Aquatech vehicles." HSIC also asserted Aquatech "made multiple, material misstatements in applications for and communications related to [HSIC] coverage, with the intent to deceive [HSIC]." HSIC argued it was entitled to summary judgment declaring the insurance policy void, *ab initio*, due to material misrepresentations made by Aquatech and the Chumleys, with the intent to deceive HSIC into providing coverage.

The Carrolls, Ethan, Aquatech, and the Chumleys filed oppositions to the motion for summary judgment. They argued general issues of material fact exist as to whether Aquatech's insurance agent, Integra Insurance Company, and its employee, Kellie Stein, functioned as the agent for HSIC or for Aquatech, and whether Stein's actions are attributable to HSIC. They also argued Stein entered the information onto the applications and submitted them to Mrs. Chumley for signature; therefore, there is no evidence to establish the Chumleys knew the information in the applications was inaccurate and that they intended to mislead HSIC. Further, they argued

3

HSIC was aware Ethan drove the vehicles and failed to cancel coverage or issue an endorsement excluding him from the policy, and "[a]t a minimum, HSIC would have known it needed to follow up on Ethan Chumley's driver's license status." Notwithstanding Mrs. Chumley's signature on the applications, the Carrolls, Ethan, Aquatech, and the Chumleys agued Stein entered the information on the application and falsely informed HSIC's agent, Regional Insurance Services Company ("RISCOM"), Ethan no longer worked for Aquatech.

Following a hearing, the district court granted HSIC's motion for summary judgment and dismissed the claims against HSIC.[2] The court stated:

\*\*\*

The three elements recognized by Louisiana courts to void an insurance policy pursuant to La. R.S. 22:860 are: 1) the insureds made misrepresentations in the application for coverage, 2) the misrepresentations were material to issuing the coverage, and 3) the insureds made the misrepresentations with the intent to deceive.

The court reviewed [HSIC]'s Motion and Memorandum, and thoroughly reviewed the lengthy and thoughtful oppositions filed by Plaintiffs and Defendants. After said review, the court finds that none of the reasoning argued by Plaintiffs and Defendants creates a genuine issue of material fact as to the three elements that dictate rescission under La. R.S. 22:860. The Court finds that the three elements of rescission have been proven by [HSIC]. No genuine issue of material fact exists and [HSIC] is entitled to judgment as a matter of law, voiding the insurance policy it issued to Defendants in August 2017.

\*\*\*

[HSIC]'s policy \*\*\* is void *ab initio* due to the material misrepresentations made by Aquatech Industries, with the intent to deceive [HSIC] into providing coverage.

\*\*\*

_____

[2] The district court declared the judgment an appealable partial final judgment, pursuant to La. C.C.P. art. 1915(A)(1), "because it dismisses the suit as to [HSIC] but not as to any other parties."

4

The Carrolls, Ethan, Aquatech, and the Chumleys appeal.

**DISCUSSION**

The appellants contend the district court erred in granting summary judgment and dismissing their claims against HSIC. They argue the trial court improperly weighed conflicting evidence, assessed the credibility of witnesses, and misapplied the law. The appellants also argue HSIC failed to prove a false statement was made "by the insured" because a genuine issue of material facts exists as to who committed the fraud/misrepresentation: Stein or the Chumleys. They assert the misrepresentations contained in the original application are immaterial because HSIC learned that Ethan was driving the company vehicle but did not cancel the policy or exclude him from the policy. Further, when the issue of the status of Ethan's driver's license arose, Stein, not the Chumleys, misrepresented to HSIC that Ethan was no longer driving the vehicles and was no longer employed by Aquatech. Additionally, when the policy was up for renewal, HSIC's underwriting department waived the loss control inspection, which would have revealed that Ethan was still driving the vehicles insured under the policy.

Additionally, Aquatech and the Chumleys argue the district court erred in granting the motion for summary judgment because it improperly weighed conflicting evidence and made credibility determinations. Aquatech and the Chumleys also argue genuine issues of material fact exist with regard to whether Ethan was a covered driver under the policy, and whether the actions taken by Stein in failing to follow up with Aquatech to ascertain Ethan's driving status are attributable to HSIC.

A *de novo* standard of review is required when an appellate court considers rulings on motions for summary judgment, and the appellate court uses the same criteria that governed the district court's determination of whether summary judgment was appropriate. *Sepulvado v. Travelers Ins.-Charter Oak Fire Ins. Co.*, 52,415 (La. App. 2 Cir. 11/8/18), 261 So. 3d 980. A court must grant a motion for summary judgment if the motion, memorandum, and supporting documents show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Green v. Brookshire Grocery Co.*, 53,066 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1256.

In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Green*, *supra*. Although summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith, a trial court may grant summary judgment based on an intent issue when there is no genuine issue of material fact concerning the pertinent intent. *Cypress Heights Academy v. CHA Investors, LLC*, 21-0820 (La. App. 1 Cir. 6/7/22), 343 So. 3d 736, *writs*

6

*denied*, 22-01284 (La. 11/8/22), 349 So. 3d 574 *and* 22-01247 (La. 11/8/22), 349 So. 3d 576.

When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967(B).

La. R.S. 22:860(A) provides:

> [N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.

A prospective insured has a duty to inform the insurer of all facts which might be used in determining whether the insurance policy will be written. *State Farm Mut. Auto. Ins. Co. v. Bridges*, 45,162 (La. App. 2 Cir. 5/19/10), 36 So. 3d 1142; *St. Paul Fire and Marine Ins. Co. v. St. Clair*, 193 So. 2d 821 (La. App. 1 Cir. 1966), *writ denied*, 250 La. 375, 195 So. 2d 646 (1967). In interpreting La. R.S. 22:860, formerly R.S. 22:619, an insurer must prove: (1) the insured made a false statement, (2) the false statement was material, and (3) it was made with intent to deceive. *Willis v. Safeway Ins. Co. of La.*, 42,665 (La. App. 2 Cir. 10/24/07), 968 So. 2d 346; *West v. Safeway Ins. Co. of La.*, 42,028 (La. App. 2 Cir. 3/21/07), 954 So. 2d 286; *Dye v. Walker*, 36,482 (La. App. 2 Cir. 10/23/02), 830 So. 2d 429, *writ denied*, 02-2868 (La. 1/31/03), 836 So. 2d 72. Strict proof is not required to show the applicant's intent to deceive, because of the inherent difficulties of proving one's intent. *Id*. The intent to deceive must be determined from the

attending circumstances which indicate the insured's knowledge of the falsity of the representations made in the application and his recognition of the materiality thereof, or from circumstances which create a reasonable assumption that the insured recognized the materiality of the misrepresentation. *Id.* If the surrounding circumstances, viewed objectively, create a reasonable assumption that the insured probably intended to deceive the insurer, the policy should be voided. *Id.*

In the instant case, HSIC, as the movant, bore the initial burden on summary judgment. The record established the commercial automobile policy in dispute was issued to Aquatech by HSIC for the period of August 1, 2016, to August 1, 2017. The policy contained the following provisions:

\*\*\*

**SECTION IV – BUSINESS AUTO CONDITIONS**

\*\*\*

**B.      General Conditions**

\*\*\*

**2. Concealment, Misrepresentation Or Fraud**
This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured," at any time, intentionally conceal or mispresent a material fact concerning:

a. This Coverage Form;
b.  The covered "auto";
c.  Your interest in the covered "auto"; or
c.  A claim under this Coverage Form.

\*\*\*

**LOUISIANA CHANGES**
This endorsement modifies insurance provided under the following:

\*\*\*

C. Changes In Conditions

\*\*\*

6. The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or

8

any other "insured" at any time, intentionally conceals or misrepresents a material fact concerning:

a. This Coverage Form;
b. The covered "auto";
c. Your interest in the covered "auto"; or
d. A claim under this Coverage Form.

***

In support of its motion, HSIC introduced into evidence a statement of

the following uncontested facts:

Steve Gore, the accountant employed by the Chumleys and their businesses, acted as the contact person for Aquatech in communications with its insurance agency, Integra;

Integra was responsible for representing Aquatech in applying for and maintaining insurance coverage; and

Kellie Stein was an account manager employed by Integra, and she was responsible for obtaining/handling coverage for Aquatech. Stein acted as agent for Aquatech in applying for coverage with HSIC and communicated with Aquatech to obtain the necessary information for the application. Stein sent the information RISCOM, the underwriting agent for HSIC.

More specifically, HSIC established on June 14, 2016, Stein emailed Gore,

requesting a "list of drivers, including name, DOB and driver's license

number." Gore responded by providing Stein with Edward G. Chumley's

name, date of birth, and driver's license number. On July 14, 2016, Stein

completed the application based upon the information provided by Gore.

The application provided, in part:

***

**DRIVER INFORMATION (Include drivers who frequently use own vehicles)**

**DRIVER #**      **NAME** (Include address, if required) ***
001      **Edward G Chumley**

***

**EXPLAIN ALL "YES" RESPONSES**      **YES**     **NO**

***

9. ANY VEHICLES USED BY FAMILY

9

| MEMBERS? IF SO, IDENTIFY IN REMARKS | X |

\*\*\*

| 14. ANY DRIVERS WITH MOVING TRAFFIC VIOLATIONS? | X |

\*\*\*

Additionally, the Driver's License Report of Edward Gary Chumley was attached to the application showing Dr. Chumley's driver's license was valid, he had no traffic violations/convictions, and he had no suspensions or revocations. The application was signed by Mary M. Chumley on July 26, 2016. The application for renewal of the policy was completed in July 2017, and, again, Mrs. Chumley signed the renewal application, asserting Edward G. Chumley was the sole driver, the vehicle was not used by any family members, and the vehicle was not used by any driver with moving traffic violations.

Stein testified she was employed by Integra as an account manager from March 2015 until April 2019. Her job duties included issuing certificates of insurance, obtaining renewal quotes, and communicating with small businesses to obtain information for coverage. Stein also testified she acted as the agent for Aquatech and/or the Chumley business entities to procure insurance, while RISCOM acted as the agent for HSIC to bind coverage for small businesses. Stein stated she entered the information into the system, the forms were completed by the system, all of her communications regarding the Aquatech policy were with Steve Gore, and she prepared the application based on information provided to her by Gore. Once she completed the application, she sent it to Gore via email, Gore presented the application to Mrs. Chumley, and Mrs. Chumley signed it. Stein testified she assumed the answers in the application were true and accurate because she expected potential insureds to provide truthful and

accurate information. Thereafter, after she received the signed application, she submitted it to RISCOM to consider binding coverage for the HSIC policy.

Stein also testified she received notice from RISCOM that Ethan needed to be added to the policy, and she emailed Gore to acquire Ethan's information to obtain his driving record.[3] She also testified Gore informed her Ethan's Texas-issued driver's license had expired, and he would inform her when he renewed it. She admitted she did not know whether Gore communicated with the Chumleys about the status of Ethan's driver's license. She stated Gore subsequently canceled the request to add Ethan as a driver. Stein testified when it was time to renew the policy in 2017, Gore provided her the same information, *i.e.*, Edward Chumley was the sole driver of the Aquatech vehicles, no other family members were drivers, and no driver had any moving violations; Mrs. Chumley signed the application. Stein testified she did not receive any information from Aquatech to suggest Ethan was driving the insured vehicles. Stein further stated Integra, as the agent for Aquatech, was responsible for reporting the accident claim to HSIC; Integra did not have any additional obligations regarding the claim.

Michael Dugan, the president of RISCOM, described RISCOM as "an underwriting and claims management company," which "provides claims handling" for HSIC. He stated his duties include making underwriting decisions in terms of issuing policies, *i.e.*, deciding whether "something is an underwriting risk that [RISCOM] don't want to insure." Dugan also

---

[3] The record established that in 2016, a loss control representative for HSIC visited Aquatech and learned Ethan was employed by Aquatech and was a driver of the vehicles. The representative recommended that Ethan be identified as a potential driver on the policy, and an employee for RISCOM emailed Stein to confirm whether Ethan should be added as a driver of Aquatech's vehicles.

11

testified Integra, the producing agent, was not involved in any decisions in terms of pursuing denial of coverage. According to Dugan, Integra gathered information as presented by the insured, completed the application, and submitted it to underwriting at RISCOM. Thereafter, RISCOM prepared an insurance quote based on the information presented in the application.

Gore provided a recorded sworn statement, during which he explained he was asked to "check into an insurance policy" for Aquatech. He admitted he was Stein's contact in procuring insurance coverage for Aquatech, and he received the application by email and forwarded it to the Chumleys. According to Gore, Ethan was Aquatech's sole "regular" employee, and he denied having any knowledge of Ethan's driving record or of his prior DWI convictions during the process of procuring insurance. He stated he obtained the information for the application regarding the driver(s) from Dr. Chumley. He also stated he had a telephone conversation with Stein about employees having access to Aquatech's vehicles, but he was unable to recall the specifics of the conversation. Gore stated he "would think" he would have been referring to Ethan when he spoke to Stein about "other employees."

Gore admitted he told Stein that Ethan was "a driver, not a regular driver." He also admitted he informed Stein that Ethan "did not notice his license had expired last month" and instructed her to cancel the request to add Ethan as a driver on the policy. Gore stated someone at Aquatech – either Ethan, Mrs. Chumley, or both – made the decision to cancel the request to add Ethan as a driver. Gore stated he did not complete any portion of the insurance applications, and he was not authorized to sign applications or checks on behalf of the Chumleys. He also asserted he did

12

not know if Mrs. Chumley read the applications; however, he stated she signed them because he recognized her signature.

Dr. Chumley provided a sworn statement, as stating as follows:

Q: Now, was anybody authorized to drive those two vehicles for Aquatech or for any purpose other than you?

A: Ethan was authorized to drive the truck to run errands like, you know, in a fish farm you have to use salt. You have to pick up feed, odds and ends like that. The truck was used, because we had to have a heavy duty and to transport fish, so I think that was the only three uses of that truck.

***

Q: Was he – so did – how often did he drive it, I guess, then, any, during the time that Aquatech owned the truck up until the time of the accident, how often did Ethan drive the truck?

A: This is a guess, but, you know, the farm is run twenty-four hours a day, so I would assume, you know, every day, because there was always stuff – you know, there's just so much maintenance on the farm, so a lot of times he would have to go to Minden to get, you know, as simple of stuff as PVC pipe, things of that nature.

***

Q: And you were the only driver listed at the time and was that correct at the time, in other words, you were the only driver that was going to be driving a vehicle owned and used for the benefit of Aquatech; is that right?

A: The primary driver, yes.

Q: At the time this application was done, did you know or did Aquatech know that there was going to be other people that would drive a vehicle that was insured [under] your policy?

A: Yeah, it would be Ethan.

***

Q: All right. On the opposite side of that block, there is a question, any vehicles used by family members, if so, identify in remarks, and the answer given is no. So that wasn't correct at the time?

***

A: Well, I mean I used it and Ethan used it, so I don't know why it would be marked no.

***

13

Q:      [A]t the time this application was filled out, the intent of
        Aquatech was still that Ethan would drive and use either
        of the trucks and the gooseneck trailer?

A:      Well, yeah. Yeah.

When asked whether he knew Ethan had prior DWI convictions, Dr.

Chumley admitted he was aware of Ethan's "misdemeanor" conviction for

DWI because he attended a hearing.  However, he denied knowing Ethan's

driver's license was suspended.

During her statement, Mrs. Chumley specified the following:

                                ***
A:      [Reading from the application] Include drivers who
        frequently use own[ed] vehicles. Well, certainly he was.
        In [20]16, it's – no, I would have to agree with Dr.
        Chumley on this, that Ethan would have driven it from
        time to time.

Q:      [L]et me ask just a couple of questions about that.
        Number nine asks, any vehicles used by family members,
        if so, identify on remarks, and the answer on that is no.
        That answer is really not accurate at the time the
        application was made, true, because Ethan did use the
        vehicles –

A:      Ethan did use the vehicles on occasion, he certainly did.
                                ***
Q:      And the answer is no, so the answer is not correct?

A:      Yes, it should have been, because he is a family member
        and I know that he drove the truck occasionally.
                                ***
Q:      In other words, you understood that this application was
        to be presented to an insurance company to ask whether
        they would insure you are not?

A:      I'm sure, I mean, I would think that would be the normal
        process.

Q:      And that information that's contained in the application
        had to be accurate, right?

A:      I would think so, yes.
                                ***

14

Further, Dr. and Mrs. Chumley stated they were aware of one of Ethan's traffic offenses, which they both described as "a misdemeanor." Mrs. Chumley further stated Dr. Chumley was listed on the policy because he was the owner of the vehicle, and she did not know why Ethan was not listed as a driver. She affirmed Ethan "should have been" listed because "he is a family member, and I know that he drove the truck occasionally. Mrs. Chumley also verified she would have been the person Stein contacted about Ethan's driving record. She stated Stein likely informed RISCOM that Ethan was no longer employed at Aquatech because "[h]e may not have been working at the location at that time" because he was "in Florida for a while." Mrs. Chumley also affirmed she knew Ethan was a driver and he had a "misdemeanor" moving violation when she signed the renewal application in 2017.

Robin Widmer, the assistant underwriting manager of RISCOM, attested as follows:

***

RISCOM would not have bound the original or renewal [HSIC] liability policies to Aquatech if, in the applications for those policies, Aquatech had: 1) identified Ethan Chumley as a proposed driver of vehicles insured under the policy, 2) identified Ethan Chumley as a family member who would be using vehicles insured under the policy; and/or 3) admitted Ethan Chumley, who had multiple "moving traffic violations" would be driving the vehicles.

Alternatively, if Aquatech had: 1) identified Ethan Chumley as a proposed driver of vehicles insured under the policy, 2) identified Ethan Chumley as a family member who would be using vehicles insured under the policy; and/or 3) admitted Ethan Chumley, who had multiple "moving traffic violations" would be driving the vehicles, RISCOM would only have bound the policies with an endorsement that excludes all coverage for any losses arising from Ethan Chumley's use of insured vehicles.

15

> If Aquatech had provided honest and accurate responses to RISCOM's September 2016 requests for information concerning Ethan Chumley's driver's license, driving record and use of Aquatech vehicles, RISCOM/[HSIC] would have cancelled the original policy and would not have bound the renewal policy. Alternatively, RISCOM would have added an endorsement to both the original and renewal policies that excluded all coverage for any losses arising from Ethan Chumley's use of insured vehicles.

In her deposition, Widmer testified RISCOM acts "as the underwriting policy services and loss control for our program with [HSIC]." She stated Aquatech applied for insurance coverage through its agent, Integra.

In response to the motion for summary judgment, the appellants argued there is a genuine issue of material fact as to whether Stein, who completed the application, acted as an agent for HSIC. However, Stein testified she was employed by Integra, and she was the agent for Aquatech, while RISCOM was the agent for HSIC. Additionally, Widmer attested RISCOM, not Stein, was the "managing general agent in Louisiana for [HSIC]" and was responsible to underwriting, binding, issuing, and servicing HSIC policies issued in Louisiana. Mere speculation is insufficient to defeat a properly supported motion for summary judgment. *Lambert v. Zurich Am. Ins. Co.*, 55,064 (La. App. 2 Cir. 6/28/23), 366 So. 3d 1285; *Wilson v. GEICO Cas. Co.*, 54,551 (La. App. 2 Cir. 6/29/22), 343 So. 3d 308.

Neither the Carrolls, Aquatech, nor the Chumleys presented any evidence to support any claim that Stein was an agent or employee acting on behalf of HSIC. Furthermore, there is no allegation or argument that Mrs. Chumley was incapable of reading and understanding the insurance application, and neither party has made any allegations of negligence, or any

16

other misconduct, against Stein or her employer, Integra.[4]  Thus, we find the Carrolls, Aquatech, and the Chumleys have not produced factual support to establish the existence of a genuine issue of material fact with regard to whether the Chumleys intended to deceive the agent and/or insurer with regard to Ethan's status as a driver, his driving history, and his insurability.

We acknowledge summary judgment is rarely appropriate in cases requiring a determination of intent.  However, in this case, there is no genuine issue of material fact regarding the Chumleys' intent.  The original application and renewal application listed Edward Chumley as the sole driver for the vehicles covered under the policy.  The application also stated no other family members drove the vehicles, and no driver had a history of moving violations.  Both the original and renewal applications bore the signature of Mrs. Chumley.  In their sworn statements, Dr. and Mrs. Chumley admitted Ethan was a driver of the vehicles.  Dr. Chumley admitted at the time the application was submitted, he was aware Ethan would drive the vehicles.  Mrs. Chumley also admitted she understood the application would be presented to the insurance company to procure coverage, and she "would think" the information needed to be accurate.  She also admitted she signed both applications.[5]

---

[4] In the absence of any allegations of fraud, duress, or misconduct of the insurance agent, a person who signs a written document is presumed to know and understand what she signs. *Mixon v. Progressive Specialty Co.*, 29,698 (La. App. 2 Cir. 6/18/97), 697 So. 2d 662; *Pine v. Doolittle*, 28,141 (La. App. 2 Cir. 6/26/96), 677 So. 2d 686; *Thomas v. Goodson*, 26,356 (La. App. 2 Cir. 12/7/94), 647 So. 2d 192.

[5] Our law is clear that one who signs a document is presumed to have done so with knowledge of its contents, regardless of whether he or she actually read it. *Tillman v. USAgencies Cas. Ins. Co.*, 46,173 (La. App. 2 Cir. 3/2/11), 58 So. 3d 1009, *writ denied*, 2011-0665 (La. 5/6/11), 62 So. 3d 127; *Harrell v. Currie,* 43,001 (La. App. 2 Cir. 2/13/08) ), 975 So.2d 777, *writ denied*, 08-0574 (La.5/2/08), 979 So.2d 1286.

We find HSIC met its burden of proving the Chumleys made material misrepresentations in the application for insurance with the intent of deceiving the insurer with regard to whether Ethan was a driver of Aquatech's vehicles and whether he had moving traffic violations. Despite their efforts to downplay Ethan's abhorrent driving history by characterizing it as "a misdemeanor," it is evident the Chumleys intentionally failed to disclose Ethan's status as a driver, whether frequent or occasional, and directed Gore to cancel the request to add Ethan to the insurance policy. The Chumleys admitted they intended to allow Ethan to drive the vehicle at the time the applications for insurance were signed by Mrs. Chumley and submitted to the agent. Yet, they failed to disclose this fact to the agent, RISCOM, or HSIC. Widmer attested RISCOM would not have bound coverage had Ethan been listed as a driver, and in the alternative, it would have excluded Ethan from coverage under the policy. HSIC issued the policy because it relied on the assertions set forth in the application, *i.e.*, Dr. Chumley was the sole driver, no other family members drove the vehicles, and no drivers had moving violations. We find no genuine issues of material fact exist, and HSIC was entitled to summary judgment as a matter of law.

The appellants also contend the district court erred in granting summary judgment because a trier of fact is required to decide whether HSIC is prohibited from asserting coverage defenses. They argue under the doctrine of equitable estoppel, HSIC has waived its right to argue rescission of the policy because it did not fully return the full amount of the premium, *i.e.*, it returned only the premium for the remaining policy period, *i.e.*, March 29-August 1, 2018.

18

Waiver is the intentional relinquishment of a known right, power, or privilege, which occurs when there is an existing right, a knowledge of its existence, and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371 (La. 1987); *Green v. Brown*, 51,152 (La. App. 2 Cir. 2/15/17), 212 So. 3d 718, *writ denied,* 17-0707 (La. 9/6/17), 224 So. 3d 985; *Maddox v. Keen*, 33,072 (La. App. 2 Cir. 4/7/00), 756 So. 2d 1279.  Reliable proof of a waiver is required.  *Tate*, *supra*.

Our review of the record reveals HSIC refused to accept liability, and one week after the accident, it notified Aquatech and the Chumleys of its investigation into potential material misrepresentations, and it reserved its right to deny and/or limit coverage during the investigation.  La. R.S. 22:879 provides:

> None of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer:
>
> (1) Acknowledgment of the receipt of notice of loss or claim under the policy.
>
> (2) Providing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or incompleted.
>
> (3) Investigating any loss or claim under any policy or engaging in negotiations considering a possible settlement of any such loss or claim.

Further, in this answer to the petition filed by the Carrolls and State Farm, HSIC asserted the policy was "annulled and voided as a result of material misrepresentations in the application … with the intent to deceive." Additionally, there is no indication HSIC handling of the return of the

premium constituted a waiver of its defense. Once the policy was cancelled, the unearned premium was refunded, and the full amount was properly refunded after the court declared the policy was void *ab initio*. Under the facts of this case, we find the appellants failed to carry the burden of proving HSIC waived the affirmative defense of material misrepresentation. This argument lacks merit.

The Carrolls, Aquatech, and the Chumleys further contend the district court erred in relying on "inadmissible evidence" offered by HSIC and incorrectly excluded affidavits offered by the Carrolls and the Chumleys. The Carrolls argue the trial court excluded the affidavits of Gore and the Chumleys, but it accepted the affidavits of Lynda McCallon,[6] the underwriter's vice president of claims and acting legal advisor, and Robin Widmer, the assistant underwriting manager,[7] as well as the deposition testimony of Stein.[8]

---

[6] They argue McCallon stated HSIC has "consistently reserved, maintained and advanced all" coverage defenses from the inception of the "investigation" and during this litigation. Such an assertion is a legal opinion, a conclusion of law, and a matter of dispute. McCallon also attested HSIC "did not intend nor did it waive any other rights under the policy[.]" This statement should be stricken because it is also an impermissible "interpretation of law." McCallon's assertions regarding the refund of the remaining balance paid for the premium goes to the issue of waiver or estoppel, and, therefore, should not have been considered for the purposes of summary judgment.

[7] In her affidavit, Widmer attested HSIC relied on Aquatech's representations that Edward Chumley was the only driver, and no proposed drivers had moving traffic violations. However, in her deposition, Widmer admitted she was not involved in the underwriting process, and she had no personal knowledge of who completed and/or provided answers to the questions on the application. Therefore, some of the statements made in Widmer's affidavit should have been stricken.

[8] More specifically, they argue Stein the Chumleys and Gore "lied" in an effort to defraud HSIC. This portion of Stein's testimony constitutes an opinion, not a fact, and raises a credibility issue which should be determined by the trier of fact. Further, Stein should not have been allowed to testify regarding the emails between her and Gore because the content of the emails contain inadmissible hearsay, *i.e.*, Ethan's expired driver's license information.

The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. *Rives Plantation, L.L.C. v. BPX Properties (N.A.) LP*, 55,301 (La. App. 2 Cir. 12/20/23), 376 So. 3d 328, *writ denied*, 24-00109 (La. 3/12/24), 381 So. 3d 50; *Taylor v. Nexion Health at Pierremont, Inc.*, 54,802 (La. App. 2 Cir. 12/14/22), 353 So. 3d 403, *writs denied*, 23-00057 (La. 3/14/23), 357 So. 3d 823 *and* 23-00056 (La. 3/14/23), 357 So. 3d 830.

La. C.C.P. art. 966(D)(2) provides:

> The court shall consider only those documents filed or referenced in support of or in opposition to the motion for summary judgment but shall not consider any document that is excluded pursuant to a timely filed objection. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing whether the court sustains or overrules the objections raised.

When an objection to an affidavit in support of or in opposition to a motion for summary judgment is made in accordance with La. C.C.P. 966(D)(2), the only issue to be determined is whether the affidavit is in compliance with La. C.C.P. art. 967. *Farrar v. Centerpoint Energy Res. Corp.*, 52,557 (La. App. 2 Cir. 4/10/19), 269 So. 3d 1149; *Mariakis v. N. Oaks Health Sys.*, 18-0165 (La. App. 1 Cir. 9/21/18), 258 So. 3d 88.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967(A); *Martin v. Thomas*, 21-01490 (La. 6/29/22), 346 So. 3d 238; *Roach v. Moffatt*, 55,415 (La. App. 2 Cir. 1/10/24), 379 So. 3d 268. Affidavits with conclusory allegations of fact which are devoid of specific facts are not sufficient to defeat summary

judgment. *Roach v. Moffatt*, *supra*; *Cheramie Servs. Inc. v. Shell Deepwater Prod. Inc.*, 09-1633 (La. 4/23/10), 35 So. 3d 1053; *ACMG of La. Inc. v. Jones*, 35,102 (La. App. 2 Cir. 9/26/01), 796 So. 2d 704, *writ denied*, 01-2869 (La. 1/11/02), 807 So. 2d 240. Affidavits which merely restate factual allegations of the pleadings and assert legal conclusions are not deemed personal knowledge. *Roach v. Moffatt*, *supra*; *Pugh v. Beach*, 31,361 (La. App. 2 Cir. 12/11/98), 722 So. 2d 442; *Mapp Const. LLC v. Southgate Penthouses LLC*, 09-0850 (La. App. 1 Cir. 10/23/09), 29 So. 3d 548, *writ denied*, 09-2743 (La. 2/26/10), 28 So. 3d 275. Personal knowledge means something which a witness actually saw or heard, as distinguished from something a witness learned from some other person or source. *Barnes v. Sun Oil Co.*, 362 So. 2d 761 (La. 1978); *Roach v. Moffatt*, *supra*; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230.

In opposition to the motion for summary judgment filed by HSIC, Aquatech and the Chumleys, who had already introduced sworn statements in which they admitted Ethan was a driver of the vehicles, sought to introduce sworn affidavits. In her affidavit, Mrs. Chumley attested she did not "conceal, defraud, or in any way prevent information related to [Ethan's] driving status *** from being provided to Integra[.]" Dr. Chumley attested Mrs. Chumley did not "conceal, defraud, materially misstate facts, or in any way fabricate or prevent information" regarding Ethan's "driving status *** from being provided[.]" Similarly, Gore attested he did not "intend to conceal, defraud, make a material misstatement, convey any incorrect information, or hide the name of any drivers on the application." The district sustained HSIC's objection to the affidavits.

22

We first note that Dr. Chumley attested his wife did not "conceal, defraud, materially misstate facts *** or fabricate or prevent information." The affidavit was not based on Dr. Chumley's personal knowledge but was with regard to what his wife stated to him. Additionally, the affidavit of Mrs. Chumley, in which stated she did not "conceal, defraud, materially misstate facts, or in any way fabricate or prevent information" contain legal conclusions. Likewise, Gore's affidavit, in which he attested he did not "intend to conceal, defraud, make a material misstatement, convey any incorrect information, or hide the name of any drivers on the application," also contains legal conclusion. Therefore, we find the district court did not abuse its discretion in excluding the affidavits.

With regard to the affidavits of Widmer and McCallon, both attested they were knowledgeable about the underwriting process, and they were familiar with the policies in dispute and with the business records of the underwriting company and HSIC. Contrary to appellants' argument, Widmer was not required to show she was "personally involved" with Aquatech's insurance policy. She attested she was familiar with the manner and procedure by which Aquatech's application, HSIC policies, the underwriting correspondence, and the renewed policy were created and maintained. Furthermore, the business records upon which Widmer relied were admitted into evidence. Likewise, McCallon's affidavit does not contain legal conclusions. She attested she was the vice president of claims and the acting legal advisor, and her affidavit demonstrated she had knowledge regarding the coverage provisions of the policy at issue.

We find the affidavits of Widmer and McCallon met the requirements for admission into evidence as required by La. C.C.P. art. 966(D)(2).

Consequently, we see no abuse of discretion in the district court's ruling with regard to the affidavits.

The appellants also argue the trial court erred failing to strike the portions of Stein's deposition in which she testified Aquatech, the Chumleys, and/or Gore "lied" regarding Ethan. Our review of the record reveals that during her deposition, Stein was questioned with regard to whether she/Integra, as the agent, advocated for Ethan, Aquatech, and the Chumleys after the accident. She testified she did not advocate for the insureds because "it was our position that they lied to us" when they asserted Ethan was not a driver. Stein later explained the "they" to which she referred included Ethan, his parents, and Gore. She stated:

> It's not specifically pointing a finger at who within the organization lied. The named insured, Aquatech, LLC, misrepresented the facts. *** [T]he application and the information on the application was submitted to me and signed fraudulently. It was signed by Mary Chumley and forwarded to me and the information was sent to me by Steve Gore. I have no knowledge of where Steve got the information, but that information was sent to me fraudulently.

As a general rule, a lay witness is permitted to draw reasonable inferences from his or her personal observations. If the testimony constitutes a natural inference from what was observed, no prohibition against it as the opinion of a non-expert exists as long as the lay witness states the observed facts as well. *Farrar*, *supra*; *State v. Davis*, 44,656 (La. App. 2 Cir. 11/18/09), 26 So. 3d 802, *writ denied*, 09-2768 (La. 6/25/10), 38 So. 3d 355. The trial court is vested with much discretion in determining whether to allow lay witness testimony as to an opinion or inference, in accordance with La. C.E. art. 701, including the admissibility of evidence. Its decision to admit or exclude evidence will not be reversed on appeal in the absence of a

24

clear abuse of discretion. *Farrar, supra.*

Our review of Stein's deposition reveals she was not testifying as an expert witness. Based on her perceptions and understanding of the transpiring events, Stein opined that either the Chumleys or Gore "lied" and/or committed "fraud" when they indicated Dr. Chumley was the only driver of the vehicles. Her conclusions were based on her review of the file and her recollection of her interactions with Gore. Accordingly, we find no error in the trial court's acceptance of Stein's lay opinion. Furthermore, the accuracy of Stein's testimony in deposition was an appropriate matter for cross-examination and goes to weight, rather than admissibility. Accordingly, we find the district court did not abuse its discretion in overruling the objection to the introduction of Stein's deposition.

Moreover, the appellants assert the district court erred in granting the motion for summary judgment because there is conflicting language in HSIC's policy regarding the timing of when an insurer can deny coverage based on fraud, and the conflicting language must be construed against HSIC. The policy provides, in pertinent part:

> This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured," ***at any time***, intentionally conceal or mispresent a material fact concerning:
>
> a. This Coverage Form;
> b. The covered "auto";
> c. Your interest in the covered "auto"; or
> d. A claim under this Coverage Form.
>
> However, such voidance of coverage applies only to the extent that such acts or omissions are made with the intent to deceive ***at the time of application*** under this Coverage Form.

(Emphasis added).

The parties argue that under the policy, the ability to void coverage only applies to acts/omissions "made with intent to deceive *at the time of application*," while, simultaneously, granting HSIC the right to void coverage due to "fraud . . . *at any time* as it relates to this Coverage Form." They maintain the conflicting language must be strictly construed against HSIC, and, therefore, this Court should deny HSIC's "material misrepresentations" defense and reverse the district court's ruling granting summary judgment.

The interpretation of an insurance contract is usually a legal question that can be properly resolved by means of a motion for summary judgment. *Bernard v. Ellis*, 11-2377 (La. 7/2/12), 111 So.3d 995; *Chreene v. Prince*, 52,351 (La. App. 2 Cir. 9/26/18), 256 So. 3d 501; *Schelmety v. Yamaha Motor Corp., USA*, 50,586 (La. App. 2 Cir. 4/13/16), 193 So. 3d 194, *writ denied*, 16-0903 (La. 9/6/16), 205 So. 3d 919. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Green ex rel. Peterson v. Johnson*, 14-0292 (La. 10/15/14), 149 So.3d 766; *Chreene*, *supra*; *Schelmety*, *supra*. An insurance contract must be "construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." La. R.S. 22:881; *Chreene*, *supra*; *Schelmety*, *supra*. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. In such cases, the insurance contract must be enforced as written. *Chreene*, *supra*; *Schelmety*, *supra.* However, exclusionary provisions in insurance contracts

are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. *Id.* The burden is on the insurer to prove that a loss comes within a policy exclusion. *Rodgers v. State Farm Mut. Auto. Ins.*, 2015-0868 (La. 6/30/15), 168 So. 3d 375; *Chreene*, *supra*; *Schelmety*, *supra*.

While we recognize exclusionary provisions are to be strictly construed against the insurer, HSIC, there is simply no ambiguity present in this provision in the policy that would allow it to be construed in favor of the appellants. Likewise, the enforcement of the provision as written would not lead to any absurd consequences. The policy provides the coverage under the policy is void if the insured makes a misrepresentation or conceals facts *at any time*. It also provides coverage is void if insured engages in "acts or omissions" with the intent to deceive *at the time of application*. In this case, both provisions, which are neither ambiguous nor contradictory, apply because misrepresentations were made in the original application, during communications between Gore and Stein about the policy, and in the renewal application. Further, Aquatech and the Chumleys engaged in acts and omissions by providing false statements with the intent to deceive at the time of the application. This assignment without merit.

### CONCLUSION

For the reasons set forth herein, the district court's ruling granting summary judgment in favor of Houston Specialty Insurance Company and declaring the policy void ab initio is hereby affirmed. Costs of this appeal are assessed to appellants/plaintiffs, Tillman Carroll and Twana Carroll, and appellants/defendants, Ethan Williams Chumley, Mary Elizabeth Chumley,

Dr. Edward G. Chumley, Chumley Property Management, LLC, Chumley Properties, LLC, and Aquatech Industries, LLC.

**AFFIRMED.**